**Marilyn LISA, Plaintiff–Appellant,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant– Appellee.**

**No. 1730, Docket 90–6014.**

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1990.

Decided July 31, 1991.

Marianne Artusio, Huntington, N.Y., for plaintiff-appellant.

Lisa M. Burianek, Asst. U.S. Atty. for the Eastern District of New York, Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for the Eastern District of New York, Robert L. Begleiter, Asst. U.S. Atty. for the Eastern District of N.Y., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before PRATT, MAHONEY and WALKER, Circuit Judges.

MAHONEY, Circuit Judge:

Marilyn Lisa appeals from a judgment of the United States District Court for the Eastern District of New York, Leonard D. Wexler, *Judge*, upholding a final decision by the Secretary of Health and Human Services (the "Secretary") denying her application for disability benefits under the Social Security Act (the "Act"). On appeal, Lisa contends principally that the district court erred in ruling her proffer of new medical evidence insufficient to justify remanding her case to the Secretary pursuant to 42 U.S.C. § 405(g) (1988). We agree, and accordingly reverse the judgment of the district court with instructions to remand the case to the Secretary for reassessment in light of the new medical evidence.

## Background

Marilyn Lisa is forty-two years old, married, and the mother of a nine-year old boy. She has a high school education. Lisa worked for a bathing suit manufacturer from 1967 to 1979, until 1976 as a biller/typist, thereafter as an administrative assistant. She describes both positions as essentially "desk jobs," although the latter required her to spend some two hours a day on her feet. She has not worked since 1979.

On April 14, 1987, Lisa applied for a period of disability and for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 416(i) and 423 (1988). Lisa alleged an inability to work, beginning November 17, 1983, due to diffuse joint pain, weakness, muscular tenderness, and fatigue. Lisa concedes that to qualify for these benefits, she must establish that she became disabled, within the meaning of the Act, on or prior to December 31, 1984, the date her insured status expired. *See* 42 U.S.C. § 423(c)(1) (1988).

The Social Security Administration denied her application initially and upon reconsideration. Lisa then sought and was granted a hearing before an administrative law judge ("ALJ"). Appearing pro se before the ALJ, Lisa testified that by November 1983 she had experienced the onset of excessive fatigue, muscular pain and weakness, and swelling of the hands, feet, and legs. She further testified that these symptoms reduced her capacity to care for herself and required her to rely on family and friends for the care of her son. Lisa stated that she had abandoned shopping, driving, and all but token efforts at housework. She testified that her condition left her arms so weak that she could barely lift them to wash her hair, and her legs so weak that she needed a wheelchair. At the time of her testimony, Lisa weighed 210 pounds, an increase of approximately 100 pounds since the onset of her symptoms.

Voluminous medical evidence was presented to the ALJ. Lisa submitted some twenty-five medical reports by numerous physicians, treating and consulting, assessing her condition. We summarize below only the most material of these reports, focusing upon those addressed in the ALJ's ruling.

Dr. Burton H. Waine, Lisa's family physician in 1983, reported that on December 1 of that year, Lisa had visited him and complained of pain in her wrists, hands, finger joints, and feet. He opined that her pain was due to early arthritis, synovitis (inflammation of a connective tissue membrane), or a penicillin reaction. He referred her to a rheumatologist, Dr. Sheldon P. Blau.

Dr. Blau examined Lisa on three occasions. A report summarizing his last examination, conducted on April 9, 1984, states that "[Lisa] did not have a clearly identifiable disease," but noted that "having had symptoms for five months, ... the possibility of rheumatoid arthritis or another collagen vascular disease exists." Dr. Blau accordingly referred Lisa to Dr. Peter D. Gorevic, a consulting rheumatologist, who examined her on June 20, 1984. The examination was "essentially negative, except for some tenderness on direct compression of the metatarsals." Dr. Gorevic's report noted that Lisa "date[d] the onset [of her symptoms] specifically to November 17, 1983."

In July 1985, Lisa sought treatment by another rheumatologist, a partner of Dr. Blau, Dr. James M. Sullivan. In a report dated September 21, 1986, Dr. Sullivan noted that at the time of his initial examination, Lisa "was virtually disabled because of burning discomfort in the balls of the feet and also discomfort in the lateral hips and around the shoulders and somewhat in the hands." His examination revealed, however, that "she was able to walk on her heels and walk on her toes and able to do deep knee bends and had a normal examination of her joints." The report stated that his subsequent examinations proved "essentially unremarkable," and concluded that "she probably has a very mild seronegative arthritis, possibly related to psoriasis (positive family history) and that she has a very poor tolerance for this. She also has a fibrositic overlay and ... borderline hypothyroidism."

In September 1986, Lisa travelled to the Mayo Clinic for a fresh evaluation of her condition. Dr. Gene G. Hunder, the examining physician, diagnosed her condition as "muscular and muscle attachment pains and obesity." He reported that her muscle strength proved normal, as did her laboratory tests. Physical examination did, however, reveal tenderness of the lumbar spine, iliac crests, shoulders, elbows, and under the heels and metatarsal areas. There was no evidence of any connective tissue disorder. A program of weight loss and exercise was recommended, with the "hope ... that her symptoms would tend to gradually improve."

On March 25, 1988, Lisa consulted Dr. Martin Schick, who diagnosed her as suffering from thyroiditis (inflammation of the thyroid). In June 1988, he prepared a written assessment of Lisa's capacity to do physical work, and concluded essentially that she was incapable of any such activity.

Relying primarily upon these submissions, the ALJ concluded that Lisa was not entitled to benefits because she was not under a "disability," as defined in section 223(d)(1)(A) of the Act, 42 U.S.C. § 423(d)(1)(A) (1988), at any time prior to the expiration of her insured status on December 31, 1984. The ALJ's principal subsidiary findings were that: (1) prior to the expiration of her insured status, Lisa "was impaired by a mild seronegative arthritis with fibrositic overlay and borderline hypothyroidism, but that she did not have an impairment, or combination of impairments," amounting to any "qualifying impairment" listed in the pertinent regulations; (2) her impairments, while they left her unable to perform prolonged standing or walking, did not preclude the performance of her "past relevant sedentary work" as a biller/typist and administrative assistant for any continuous period of at least twelve months commencing any time on or prior to December 31, 1984; and (3) her "testimony concerning her limitations and the severity of her symptoms prior to January 1, 1985 [was] not credible."

The decision of the ALJ became the final decision of the Secretary when the Appeals Council of the Department of Health and Human Services rejected Lisa's request for review. Lisa thereafter sought judicial review of the Secretary's decision in the United States District Court for the Eastern District of New York pursuant to 42 U.S.C. § 405(g) (1988). The court entered judgment on the pleadings in favor of the Secretary, finding that substantial evidence supported the administrative decision. The court also rejected Lisa's request for remand based on new medical evidence, which we describe hereinafter in connection

with our discussion of the relevant legal criteria.

This appeal followed.

## Discussion

■ Lisa raises two issues on appeal: first, whether the additional evidence she proffered to the district court justifies remanding her case for reconsideration; second, whether the ALJ fulfilled his duty to assist her, as a pro se applicant, to fully develop the administrative record. For the reasons below, we resolve the first issue in Lisa's favor. We accordingly find no need to address the second.

42 U.S.C. § 405(g) (1988) provides in pertinent part that "[t]he court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding...." *Id.* (emphasis added). In *Tirado v. Bowen,* 842 F.2d 595 (2d Cir.1988), we summarized the three-part showing required by this provision as follows:

> [A]n appellant must show that the proffered evidence is (1) " 'new' and not merely cumulative of what is already in the record," *Szubak v. Secretary of Health & Human Servs.,* 745 F.2d 831, 833 (3d Cir.1984), and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative, *see Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2d Cir.1975). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. *See Szubak,* 745 F.2d at 833; *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir. 1981). Finally, claimant must show (3) good cause for her failure to present the evidence earlier. *See Tolany v. Heckler,* 756 F.2d 268, 272 (2d Cir.1985) (good cause shown where new diagnosis was based on recent neurological evaluation

and assessment of response to medication required observation period).

842 F.2d at 597.

On appeal, Lisa contends that the additional evidence she proffered to the district court satisfies these requirements. The proffered evidence consists of (1) the reports of four physicians concurring in the diagnosis that Lisa suffers from fibromyalgia, a rheumatic disease also known as fibrositis and fibromyositis, and two magazine articles describing the disease; and (2) a letter by Dr. Waine specifying that Lisa "was unable to work" as of the date he examined her, December 1, 1983. We consider each in turn.

Lisa proffered to the district court a report by Dr. Stephen Sarroway dated May 15, 1989 which stated that "her symptoms of Fibrositis began in June of 1983 and resulted in a physical disability by the fall of 1983, preventing her from carrying out her housework or being employed in any kind of gainful activity." A second report, by Dr. Ashock M. Yaswani dated July 19, 1989, "diagnosed [Lisa] as having Fibromyalgia, which has incapacitated her from doing her normal household duties," and added that "[s]he is also unable to ambulate for any great lengths of time, due to the muscular pain."

A third report, by Dr. Frederick D. Kaplan dated July 20, 1989, stated a "consensus of opinions" that Lisa had fibromyositis and observed that the illness had incapacitated her, rendering her unable to perform any activity for more than thirty or sixty minutes without exhaustion. Finally, Dr. Stephen Carsons, by letter dated August 4, 1989, characterized Lisa as suffering from "severe fibromyalgia." He also reported that Lisa's symptoms "include severe muscular skeletal pain and tenderness resulting in an inability to stand or ambulate for long periods of time [and] ... intermittent confinement to a wheelchair."

One of the articles that Lisa proffered to supplement these reports characterized fibromyalgia as a rheumatic disorder that eludes easy diagnosis, and described as its "classic" symptoms "muscular pain throughout the body, 'tender points' and

fatigue." The other article noted that the disease "is much more common in women than men, and generally occurs between the ages of 35 and 60."

We conclude that these reports and articles satisfy the three-part showing demanded by section 405(g). The Secretary contends that this evidence is not "new," pointing to a reference to fibrositis in Dr. Sullivan's report dated September 21, 1986. Dr. Sullivan's diagnosis, however, was that Lisa had a "very mild seronegative arthritis," together with a "fibrositic overlay and borderline hypothyroidism." Nothing in the record suggests that the Secretary attached any special significance to this tangential mention of fibrositis or pondered its implications. Plainly, the proffered evidence is not "cumulative." *See Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir.1984) (ruling reports not cumulative that set out claimant's personal history in greater depth than already in record).

■ "Good cause" for failing to present evidence in a prior proceeding exists where, as here, the evidence surfaces after the Secretary's final decision and the claimant could not have obtained the evidence during the pendency of that proceeding. *See Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir.1985); *Szubak*, 745 F.2d at 833; *Burton v. Heckler*, 724 F.2d 1415, 1418 (9th Cir.1984). The Secretary does not contest this point.

We turn to the question of materiality. The Secretary concedes that "fibrositis, or fibromyalgia, is not easily detected by standard clinical tests," that Lisa's new diagnosis may be "helpful as an explanation for [her] symptoms and for purposes of treatment," and that "some of [her] symptoms may have been present before December 31, 1984." The Secretary nonetheless insists that the new diagnosis is immaterial because it "is not evidence of [Lisa's] disability during her insured period." We disagree.

We have observed, repeatedly, that "[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement [*i.e.*, in-

sured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date."

*Gold v. Secretary of Health, Educ. and Welfare*, 463 F.2d 38, 41–42 (2d Cir.1972) (quoting *Carnevale v. Gardner*, 393 F.2d 889, 890 (2d Cir.1968)); *see also Eiden v. Secretary of Health, Educ. & Welfare*, 616 F.2d 63, 65 (2d Cir.1980).

More particularly, we have determined that when, as in this case, a diagnosis emerges after the close of administrative proceedings that "sheds considerable new light on the seriousness of [a claimant's] condition," evidence of that diagnosis is material and justifies remand. *See Tolany*, 756 F.2d at 272 (remanding for Secretary to consider medical report supplying new diagnosis); *see also Wagner v. Secretary of Health & Human Servs.*, 906 F.2d 856 (2d Cir.1990) (reversing Secretary for failing to give appropriate weight to retrospective diagnosis for consideration of which this court had previously remanded); *Tirado*, 842 F.2d at 597 (recognizing possibility that retrospective diagnosis may reveal depth of illness existing but not fully appreciated at time of prior hearing, and remanding to district court to determine in first instance whether evidence should be presented to Secretary).

Here, the introduction of Lisa's new diagnostic evidence would present a reasonable possibility of influencing the Secretary to decide her application differently. This evidence would suggest that Lisa had an impairment substantially more severe than was previously diagnosed. The proffer would also substantially bolster the credibility of Lisa's subjective complaints. As the Sixth Circuit has stated, in assessing and crediting a belated diagnosis of fibrositis:

[F]ibrositis causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep distur-

bances. In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients.

*Preston v. Secretary of Health & Human Servs.*, 854 F.2d 815, 817–18 (6th Cir.1988) (per curiam).

We thus conclude that the new diagnostic reports and the accompanying articles warrant remand for consideration by the Secretary.

█ Finally, we consider Lisa's proffer of Dr. Waine's letter dated June 30, 1989. This letter tersely recounts Dr. Waine's December 1, 1983 examination of Lisa, noting the symptoms of which she complained, the Tylenol he prescribed, and the rheumatology consultation he advised. To this extent, it merely echoes Dr. Waine's letter dated May 20, 1988, already a part of the record. The proffered letter also states, however, that "[Lisa] was unable to work." Lisa contends that this statement amounts to the assessment of functional disability, rendered by a physician who had examined her during her insured period, that the ALJ was seeking and found lacking in the medical reports before him. Thus, she insists, the letter must be presented to the Secretary. We disagree.

At the outset, we confront a question of interpretation. The district court concluded, not unreasonably, that the proffered letter reflects merely the complaints Lisa conveyed during her December 1983 examination, rather than Dr. Waine's medical opinion of her then existing condition. We will assume, however, that Dr. Waine expressed a medical opinion that Lisa was disabled from working as a result of medical problems that he diagnosed. On that assumption, his letter qualifies as "new" evidence, since it contains the first assessment by a physician who had treated Lisa during her insured period that she was unable to work during that time. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir.1989) (ruling evidence "new" because noncumulative); *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir.1987) (same); *but see Wilkins v. Secretary, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir.1991) (ruling that "new" evidence does not include evidence available at time of administrative proceeding, thus effectively collapsing "new evidence" and "good cause" requirements of section 405(g)), *opinion vacated and reh'g granted*, No. 90–1476 (4th Cir. Apr. 23, 1991).

Thus construed, the letter is also of some relevance. Whether its probative force is sufficient to vault the materiality hurdle, however, is doubtful. Dr. Waine's statement that "[Lisa] was unable to work," bereft of any supporting analysis, and read in conjunction with his treatment of her symptoms (by prescribing Tylenol) and his conjectures as to their cause (early arthritis, synovitis, or penicillin reaction), can fairly be accorded only marginal weight. We are skeptical, therefore, that requiring this evidence to be presented to the Secretary would carry a reasonable possibility of generating a different administrative outcome. We need not base our ruling on this ground, however, because the proffer plainly fails to meet the "good cause" prong of the statutory standard.

To show good cause, Lisa must adequately explain her failure to incorporate the proffered evidence into the administrative record. *See Wilkins*, 925 F.2d at 774–75; *Pierre*, 884 F.2d at 803. Lisa must go beyond showing that the proffered evidence did not exist during the pendency of the administrative proceeding. Rather, she must establish good cause for failing to produce and present the evidence at that time. *See Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir.1990); *Pierre*, 884 F.2d at 803; *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986); *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir.1985).

Lisa suggests that "[h]er difficulty in obtaining an assessment from Dr. Waine can be explained in part by his retirement from practice and by her unfamiliarity as a lay person of what sort of assessment was necessary." We find neither aspect of her explanation convincing. Lisa does not even attempt to explain how Dr. Waine's retirement precluded him from incorporating the statement that "she was unable to work" in his May 20, 1988 report that was included in the administrative record, nor how it precluded her from soliciting this information during the pendency of the administrative proceeding. The second part of her explanation is inconsistent with the record. The report of Dr. Sullivan dated September 21, 1986 documents that Lisa had repeatedly solicited disability certification throughout the fall of 1985. We therefore conclude that Lisa understood the desirability of obtaining an assessment of disability when she solicited Dr. Waine's initial report in the spring of 1988. Furthermore, the ALJ stressed at the hearing the need for Lisa to submit medical reports regarding her functional capacity as of the time when she enjoyed insured status, and received in evidence reports proffered by Lisa subsequent to the hearing. Under these circumstances, no finding of "good cause" is appropriate. *See Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 142–43 (1st Cir.1987).

We conclude that the four diagnostic reports and two accompanying articles must be presented to the Secretary to afford him the opportunity to reassess Lisa's application in light of that evidence. We leave undisturbed the district court's ruling with respect to the belated offer of Dr. Waine's letter.

## Conclusion

The judgment of the district court is reversed and the case is remanded with directions to remand to the Secretary for further proceedings not inconsistent with this opinion.