Benigno ABREU–MERCEDES, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.

No. 94 Civ. 7578 (JGK).

United States District Court, S.D. New York.

June 17, 1996.

---

1. Pursuant to Public Law No. 103–296, Sec. 105(a)(1) and Sec. 106(d) and 106(f) the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995, and the Court may enter an order for the substitution of the parties. Accordingly, Shirley S. Chater, Commissioner of Social Security, has been substituted as defendant in this action for the Secretary of Health and Human Services and the Commissioner has been used for any references to the Secretary throughout this opinion.

Benigno Abreu–Mercedes, pro se.

Mary Jo White, United States Attorney for the Southern District of New York by Linda A. Riffkin, Assistant United States Attorney, New York City, for Defendant.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiff, Benigno Abreu–Mercedes, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security (the "Commissioner"). After listening to the sworn testimony of the plaintiff and, Dr. Spatt, an impartial medical expert, and reviewing all the medical records submitted, on February 25, 1994, the Administrative Law Judge ("ALJ") determined that the plaintiff was not entitled to a Period of Disability or Disability Insurance Benefits ("DIB") under sections 216(i) and 223 of the Act, nor was the claimant "disabled," as defined in section 1614(a)(3)(A) of the Act for purposes of receiving Supplemental Security Income ("SSI").[1] (R. 16.) On July 26, 1994, the Appeals Council of the Social Security Administration denied the request to review the ALJ's decision. (R. 3–4.) This appeal followed.[2] Defendant, the Commissioner, now

---

1. References to the determinations and findings that are at issue in this appeal are referred to, interchangeably, as those of the ALJ and those of the Commissioner.

2. This appeal is taken pursuant to § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), which authorizes judicial review of determina-

moves for a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

After the defendant moved for a judgment on the pleadings, the plaintiff submitted medical records from St. Luke's/Roosevelt Hospital Center ("St. Luke's/Roosevelt") showing that he underwent arthroscopic surgery on his left shoulder in June, 1994. The first issue on this motion is whether substantial evidence supports the finding of the Commissioner. The second issue is whether this Court should consider the St. Luke's/Roosevelt medical records submitted by the plaintiff after the close of the administrative record as a basis for reversing or remanding the matter for further administrative proceedings.

For the reasons explained below, after reviewing the administrative record and the records submitted by the plaintiff after the close of the administrative proceedings, this Court concludes that there is substantial evidence supporting the Commissioner's determination that the plaintiff is not disabled within the meaning of the DIB or SSI programs. Further, the medical records submitted by the plaintiff after the close of the administrative record are not a proper basis to reverse or to remand this case for further administrative proceedings.

### I.

The plaintiff, Benigno Abreu–Mercedes, was born on February 25, 1930, and was sixty-three years old at the time of the hearing before the ALJ. (R. 47.) He completed the fourth grade while in the Dominican Republic, and has been employed as a security guard in Puerto Rico and as a counter/packer in the garment industry. (R. 26–28, 84, 94.) Plaintiff is unable to communicate in English, and speaks only Spanish. (R. 26–27.) He testified that he is disabled due to stomach problems, diabetes, problems with his left shoulder, and cramps in his legs. (R. 29–30.)

Abreu–Mercedes alleges that he became unable to work on February 24, 1992. (R. 43.) On April 28, 1992, the plaintiff filed an application for DIB and SSI. (R. 43–46).

Defendant concedes that the plaintiff met the special insured status earnings requirement of the Act for purposes of establishing entitlement to DIB on the alleged date of onset, February 24, 1992, and continued to meet these requirements through December, 1994. (Def.'s Mem. of Law at 3.) Insured status is not a consideration for SSI eligibility. (Def.'s Mem. of Law at 3.)

The plaintiff's application was denied at both the initial and reconsideration levels of administrative review (R. 58–61, 67–70.) On February 4, 1994, a hearing was held by ALJ Kenneth Levin to determine if Abreu–Mercedes was entitled to DIB or SSI. The ALJ found that the claimant was not "disabled," within the meaning of the Act and thus was not entitled to benefits. (R. 16.)

### II.

A court may reverse a finding of the Commissioner only if that finding is not supported by substantial evidence in the record. 42 U.S.C. § 405(g) (1991) (made applicable to SSI cases by 42 U.S.C. § 1383(c)(3) (1992)). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison, Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Diaz v. Shalala,* 59 F.3d 307, 312 (2d Cir.1995); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir. 1991).

The standards governing entitlement to DIB and SSI are well settled. A claimant seeking social security benefits is considered disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The analytical framework for evaluating claims of disability is defined by regulations of the Commissioner, which set forth a five-

step inquiry. *See* 20 C.F.R. §§ 404.1520, 416.920. As the Court of Appeals has explained:

> The first step in the sequential process is a decision whether the claimant is engaged in 'substantial gainful activity.' If so, benefits are denied. If not, the second step is a decision whether the claimant's medical condition or impairment is 'severe.' If not, benefits are denied. If the impairment is 'severe,' the third step is a decision whether the claimant's impairments meet or equal the 'Listing of Impairments' set forth in subpart P, app. 1, of the social security regulations. These are impairments acknowledged by the [Commissioner] to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits. If the claimant's impairments do not satisfy the 'Listing of Impairments,' the fourth step is assessment of the individual's 'residual functional capacity,' i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied. If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform 'alternative occupations available in the national economy.'

*Dixon v. Heckler,* 785 F.2d 1102, 1103 (2d Cir.1986) (citations omitted), *vacated on other grounds sub nom. Bowen v. Dixon,* 482 U.S. 922, 107 S.Ct. 3203, 96 L.Ed.2d 690 (1987); *see also Diaz v. Shalala,* 59 F.3d 307, 312 n. 2 (2d Cir.1995); *Dixon v. Shalala,* 54 F.3d 1019, 1022 (2d Cir.1995).

■ The initial burden is on the claimant to prove that he is disabled within the meaning of the Act. 42 U.S.C. § 423(d)(5); *see also Reyes v. Secretary of Health and Human Servs.,* 807 F.Supp. 293, 298 (S.D.N.Y. 1992) (Motley, J.). This burden encompasses the first four steps described above. *Rivera v. Schweiker,* 717 F.2d 719, 722 (2d Cir.1983).

Once the claimant carries the burden of proving disability by showing that his impairment prevents the return to his prior employment, he has established a prima facie case and the burden shifts to the Commissioner to prove the fifth step—that there exists alternative substantial gainful employment in the national economy that the claimant can perform considering not only his physical capacity but also his age, education, experience, and training. *Id.* 717 F.2d at 722–723; *see also Reyes,* 807 F.Supp. at 298; *Crean v. Sullivan,* No. 91 Civ. 7038, 1992 WL 183421, at *4 (S.D.N.Y. July 22, 1992) (Leisure, J.).

■ The ALJ properly followed the above process. First, he found that the plaintiff had not engaged in substantial gainful activity since the alleged onset date, February 24, 1992. (R. 15.) Then, he determined, based on the medical evidence before him, that while two of the plaintiff's impairments are considered "severe," the diabetes mellitus and the bilateral shoulder impingement syndrome, he did not have an impairment or combination of impairments that met or equaled any listed impairments.

The plaintiff nowhere explains why these findings were not supported by substantial evidence, and indeed they were.

■ There was substantial evidence for the ALJ to conclude that the stomach pains and cramps were not severe impairments. After reviewing the medical evidence and the testimony, the ALJ found that while the plaintiff had a period of acute pancreatis with pseudocyst, requiring hospitalization for a month, there was nothing in the medical record to suggest that the claimant did not recover, and, as explained by the independent medical expert, there was nothing to indicate that the plaintiff suffered from continuing ongoing pancreatis. (R. 15, 41.) The plaintiff had failed to testify to ongoing symptoms of pancreatis, except for pain in the stomach, which the plaintiff himself characterized as "not severe," but "bothersome." (R. 31.) His stomach troubles were being treated with Balox, which the independent medical expert identified as equivalent to Maalox. (R. 32.)

The ALJ examined the plaintiff's claim that his legs hurt whenever he sits, stands, or walks. (R. 12.) The ALJ noted that the claimant lives in a fifth floor walkup apartment and usually travels by taxicab. (R. 12.) The ALJ examined the plaintiff's report of calf pains for the possibility of intermittent claudication (limpness). (R. 14.) The ALJ cited the testimony of the medical expert that three medical examinations found that the plaintiff's lower limb peripheral pulses were normal, which is not consistent with intermittent claudication. (R. 14.) The ALJ concluded that "there appears to be no medical explanation for the lower limb symptoms ... [T]he testimony of the claimant is less than fully credible or consistent with the medical evidence." (R. 14; 16.)

The ALJ then concluded that, while the plaintiff had two "severe" impairments—the diabetes mellitus and the bilateral impingement syndrome—the plaintiff did not have any impairment that meets or equals, singly or in combination, any impairment in the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15–16.) The plaintiff nowhere explains why this finding was not supported by substantial evidence or how any condition or combination of conditions meets the criteria. Indeed, this finding is supported by substantial evidence in view, for example, of the medical evidence that this plaintiff's diabetes was controlled (R. 159, 169), and that, in November, 1993, the plaintiff was found to have only mild limitations in the motion of his right shoulder and the prognosis was found to be excellent. (R. 177–178.)

Since the plaintiff did not have a condition that met or equaled a listed impairment, it was necessary to determine the plaintiff's residual functional capacity for work activity. The ALJ considered the opinion of the impartial medical expert which gave the claimant's functional assessment as being able to stand and walk for six hours in an eight-hour work day, sit without limitation, and to lift and carry fifty pounds occasionally and twenty-five pounds regularly. (R. 14.) The ALJ noted that Dr. Spatt considered the medical record which indicated that a physician at St. Luke's/Roosevelt, based solely on a chart review, had limited standing to one hour at a time, and limited walking to a half hour at a time and two hours total. (R. 14.) The ALJ stated that, "Dr. Spatt saw nothing whatsoever in the same hospital records to limit either standing or walking, and specifically noted that there are no ongoing signs of pancreatic inefficiency." (R. 14.) The ALJ himself noted that the St. Luke's/Roosevelt doctor was not a treating physician for the claimant, but merely completed a chart review. (R. 14.)

The ALJ concluded from the evidence available that the claimant had recovered sufficient function from all of his proven medical conditions to permit light work activity with additional limitation in pushing and pulling and reaching for his left arm. (R. 15.) The ALJ did state that given the plaintiff's current medical condition, it would be doubtful that he could return to his former work as a garment worker where he had to lift boxes of dresses. (R. 15, 94–95.) However, the ALJ did find that the plaintiff's past work as a security guard would be within the limits of his functional capacity. As a security guard, the plaintiff spent half the time standing, and half the time sitting. (R. 15, 29.) Therefore, the ALJ found that since "the claimant is able to do one of his past relevant types of work, within twelve months of the onset date ... [he] is not 'disabled.'" (R. 15.) With this determination, there was no need to reach the fifth step in the Commissioner's sequential analysis.

The plaintiff has not challenged any of the ALJ's findings or provided any explanation as to why they are not supported by substantial evidence. Given the detailed nature of the ALJ's questioning, the medical records, and the independent medical testimony, this Court finds that there is substantial evidence to support the Commissioner's finding that the plaintiff was not disabled and thus not entitled to DIB or SSI.

### III.

Under the Act, a court may order the Commissioner to consider additional evidence, "but only upon a showing that there is new evidence which is material and that

there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Thus, the plaintiff must show that the proffered new medical evidence is:

> "(1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently. Finally, claimant must show (3) good cause for [his] failure to present the evidence earlier."

*Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988) (internal citations omitted); *see Lisa v. Secretary of Health and Human Services,* 940 F.2d 40, 44 (2d Cir.1991); *Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir.1991) (quoting *Tirado* ).

■ Defendant contends that the medical report of the arthroscopic surgery on plaintiff's left shoulder in June, 1994 is not new evidence. Defendant argues that "the report is not 'new' in the sense that the ALJ was aware of the plaintiff's left shoulder impairment and took this condition into consideration in deciding that the plaintiff had the residual functional capacity to perform light work." (Def.'s Reply Mem. at 5.) To the extent that this evidence is offered to show a limitation on the left shoulder, it is plainly not "new" because the ALJ was well aware of that and the medical expert took that limitation into account (R. 15, 38). The arthroscopic procedure on the left shoulder is "new" to the extent that it was corrective surgery performed in June, 1994, after the February, 1994 hearing before the ALJ.

■ However, to the extent that the medical records are "new," they are not material. Materiality requires that the new evidence be relevant to the claimant's condition during the time period for which benefits were denied. The period under examination spans from the alleged onset date through the date of the ALJ's decision. *See* 20 C.F.R. §§ 404.620, 416.330. The relevant period at issue in this case is from February 24, 1992 through February 25, 1994. Plaintiff's surgery is not material to the period under examination because it occurred in June, 1994.

Moreover, the concept of materiality requires a reasonable possibility that the new evidence would have influenced the Commissioner to decide the claimant's application differently. There is no such possibility here. The ALJ considered at length the bilateral shoulder impairment suffered by the plaintiff and the fact the plaintiff only had surgery performed on his right shoulder. There is nothing in the new medical records submitted by the plaintiff that provides any information about the plaintiff's condition that was not present in the administrative record before the ALJ, except for the fact that the left shoulder has now been the subject of corrective surgery. The June, 1994 records from St. Luke's/Roosevelt simply recount the arthroscopic procedure performed on the plaintiff's left shoulder. It is not conceivable that the new evidence presented by the plaintiff to this Court would have influenced the ALJ to find the plaintiff disabled. If anything, they indicate that the condition of the plaintiff's left shoulder, of which the ALJ and this independent medical expert were well aware, had now improved.

Accordingly, the new evidence submitted by the plaintiff does not constitute a basis for reversing or remanding the matter for further administrative proceedings.

## IV. CONCLUSION

For all of the reasons explained above, the defendant's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is granted.

**SO ORDERED.**