**Frank DOMBROWSKI, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 95–CV–518 (FJS/RWS).**

United States District Court,
N.D. New York.

Feb. 24, 1997.

Irwin M. Portnoy, Irwin M. Portnoy and Associates, P.C., Newburgh, NY, for Plaintiff.

Thomas J. Maroney, United States Attorney for the Northern District of New York (William H. Pease, Asst. U.S. Atty., of counsel), Syracuse, NY, for Defendant.

### DECISION AND ORDER

SCULLIN, District Judge.

The above-captioned matter having been presented to me by the Report–Recommendation of Magistrate Ralph W. Smith, Jr. filed January 23, 1997, and having reviewed the Report–Recommendation and the entire file in this matter, and no objections to said Report–Recommendation having been filed, it is hereby

**ORDERED,** that the Report–Recommendation by Magistrate Judge Ralph W. Smith, Jr. filed January 23, 1997 is ACCEPTED; and it is further

**ORDERED,** that defendant's final decision is AFFIRMED; plaintiff's request for attorney's fees is DENIED; and the complaint is DISMISSED in its entirety.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

RALPH W. SMITH, Jr., United States Magistrate Judge.

This matter was referred to the undersigned for a report and recommendation by the Honorable Frederick J. Scullin, Jr., United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). Briefs were filed by the parties in accordance with General Order 43, and no oral argument was heard.

## I. PRELIMINARY, COLLATERAL MATTERS

### Submission of new evidence

Plaintiff asserts that if the court does not remand this matter solely for calculation of benefits, in the alternative it should order that the case be remanded for the consideration of new and material evidence, namely, records from Middletown Alcoholism Treatment Center relating to his admission from October 31, 1994, to November 2, 1994, following an incident during which he discharged a weapon at home while he was intoxicated.[1] (Pl.'s ex. 1). Plaintiff contends that this evidence reflects his medical condition during that period, discloses that he has no insight into the seriousness or extent of his drinking problem, and reflects that the problem is quite serious and not easily amenable to treatment. (Pl.'s br. at 28–29).

Sentence six of 42 U.S.C. § 405(g) states that a court may order the Commissioner to consider additional evidence "only upon a showing that there is new evidence which is **material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....**" 42 U.S.C. S 405(g). The Second Circuit has summarized the requirements of section 405(g) as follows:

> [A]n appellant must show that the proffered evidence is (1) " 'new' and not merely cumulative of what is already in the record," *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984), and that it is (2) **material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative,** *see Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975). The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claim-

ant's application differently. *See Szubak,* 745 F.2d at 833; *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). Finally, claimant must show (3) **good cause for her failure to present the evidence earlier.** *See Tolany v. Heckler,* 756 F.2d 268, 272 (2d Cir.1985) (good cause shown where new diagnosis was based on recent neurological evaluation and assessment of response to medication required observation period).

*Lisa v. Secretary of Dep't of Health and Human Servs.,* 940 F.2d 40, 43 (2d Cir.1991) (quoting *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir.1988)) (emphasis added).

The decision of the administrative law judge (hereinafter "ALJ") was rendered on June 17, 1994 (Rec.30), more than four months before plaintiff's admission to the Middletown Alcoholism Treatment Center. In addition, the report makes no findings relevant to the period on or before the ALJ's decision. *See* 20 C.F.R. §§ 404.620, 416.330; *Abreu–Mercedes v. Chater,* 928 F.Supp. 386, 391 (S.D.N.Y.1996) ("The period under examination spans from the alleged onset date through the date of the ALJ's decision."). Accordingly, plaintiff's exhibit 1 is not "material" within the meaning of section 405(g) as it does not relate to plaintiff's "condition during the time period for which benefits were denied...." *Lisa,* 940 F.2d at 43; *Abreu–Mercedes,* 928 F.Supp. at 391.

Furthermore, even if these records were "material," the court finds that plaintiff has not shown the requisite good cause for his failure to present the evidence earlier. In his brief, plaintiff states that

> [t]he reason why [these records] could not be obtained during the pendency of the appeal was because the Plaintiff had to execute a special release form in order to obtain the information from the rehabilita-

---

1. The court notes that this newly-submitted evidence concerns an admission due to plaintiff's use of alcohol. If plaintiff's alcohol abuse had been a contributing factor material to the disability determination, the court's review of that decision would cease here, *Connor v. Chater,* 947 F.Supp. 56 (N.D.N.Y.1996), given the enactment of the Contract With America Advancement Act of 1996, which contains amendments to the So-

cial Security Act and significantly provides in pertinent part that "[a]n individual shall not be considered disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub.L.No. 104–121 § 105(a)(1).

tion facility and there was difficulty in obtaining that release. The time to submit any additional material had been extended by the Appeals Council in order to obtain the medical information from the hospital where the Plaintiff was treated after the subject incident, **and the Appeals Council was not likely to grant any further extension of time to do so.** In addition, the facility delayed in providing us the information upon our submission of the proper authorization.

(Pl.'s br. at 29) (emphasis added). While plaintiff obtained one extension from the Appeals Council for submission of additional evidence,[2] plaintiff just assumes that any request for a further extension would not be granted by the Appeals Council. Such an assumption is not good cause for a remand. Furthermore, it appears plaintiff did not use due diligence in obtaining the release form, executing it, and obtaining the records from the facility.

*Reopening of Plaintiff's earlier application*

■ In his brief, for the first time plaintiff seeks a reopening of his prior application for benefits filed in January 1981. He claims he is a class member of *Dixon v. Shalala,* 54 F.3d 1019 (2d Cir.1995), and *Stieberger v. Sullivan,* 792 F.Supp. 1376 (S.D.N.Y.), *modified,* 801 F.Supp. 1079, 1082 (S.D.N.Y.1992). In addition, he contends that reopening should be permitted because his August 1986 Notice of Reconsideration was constitutionally defective. Finally, he asserts that reopening is not barred by administrative res judicata. (Pl.'s br. at 25–28).

As defendant correctly contends, however, any rights plaintiff may have under *Dixon* or *Stieberger* were not at issue before ALJ Brown, who adjudicated the application that is being reviewed in this action. Furthermore, plaintiff did not ask either ALJ Brown

or the Appeals Council to reopen the prior application, and there has thus been no "final decision of the Commissioner" on this issue as required by 42 U.S.C. § 405(g). Consequently, the court will not consider the merits of plaintiff's reopening arguments. As noted by defendant, the Supreme Court has stated that "[a] reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commissioner of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Comm'n of the Territory of Alaska v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). *See Railway Labor Executives' Ass'n v. United States,* 791 F.2d 994, 1000 (2d Cir.1986) ("It is beyond cavil that a petitioner's failure to assert an argument before an administrative agency bars it from asserting that argument for the first time before a reviewing court.").

## II. DISCUSSION

Thus, at issue here are just plaintiff's applications for disability insurance benefits and supplemental security income benefits which were filed on November 5, 1992. He alleges an inability to work since February 15, 1989, due to back and neck problems, arthritis, and alcoholism. (Rec. 68–70, 104–07, 122). These applications were denied at the various levels of administrative review. (Rec. 93–96, 100–03, 109–12, 114–17, 16–30, 5–6).

Following the administrative hearing, ALJ Brown found that "[t]he medical evidence establishes that [plaintiff] has marginal osteophyte formation at C6–7, depressive disorder, and alcohol abuse," but does not have a "listed impairment." (Rec. 28). In addition, he found that plaintiff's "allegations of pain and functional limitations are totally lacking

---

**2.** In fact, in that request plaintiff noted the purported relevance of the records from the rehabilitation center. (Rec. 11). The Appeals Council took note of additional evidence plaintiff submitted which concerned his hospitalization following the incident which gave rise to his admission to the rehabilitation center. (Rec. 6). The Appeals Council noted that "[t]he hospital record notes that you were intoxicated at the time of the

incident. The mental status examination found no evidence of a thought disorder and no psychotic symptoms. The following day,you were discharged and were given a referral to Ulster County Mental Health. The Appeals Council concludes that the [ALJ] considered your alcohol abuse but found that it does not significantly affect your ability to work.. . . " (Rec. 6).

in credibility" and that plaintiff has the residual functional capacity (hereinafter "RFC") to perform "the physical exertion requirements of work except for lifting more than 10 pounds frequently and 20 pounds occasionally." (Rec. 28). Consequently, he determined that although plaintiff is unable to perform his past relevant work as a heavy equipment operator, carpenter, and plumber, he is able to perform his past work as a security guard and also has the RFC to perform at least a full range of light work. (Rec. 28). The ALJ then looked to the medical-vocational guidelines (the grids), and based upon plaintiff's age (46 at the time of his alleged onset of disability and 50 years old at the time of the decision), ninth-grade education, and RFC, found that the grids directed a conclusion that plaintiff was "not disabled." (Rec. 29).

The Appeals Council denied plaintiff's request for review (Rec. 5–6), so plaintiff commenced the instant action. He contends that the ALJ minimized the evidence to the point where it was meaningless, misjudged the extent of plaintiff's physical activities, ignored the evidence provided by Dr. Thajudeen and the agency's own physicians and psychologist, failed to find that plaintiff's impairments, due to alcoholic abuse and depressive disorder, precluded the performance of all occupations, failed to employ a vocational expert (hereinafter "VE") in reaching his decision, and was prejudiced toward plaintiff, as he is generally prejudiced toward individuals who have not worked. (Pl.'s br. at 10).

After a very careful review of the administrative record and the contentions of the parties, the court finds that substantial. evidence supports the defendant's final decision and that the defendant applied the correct legal standards. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). Consequently, it is recommended that defendant's final decision be affirmed and the complaint be dismissed.

The facts and evidence of record will not be outlined further as they have been summarized in the briefs [3] and by the ALJ. For the sake of even further brevity, the court will also not recite the usual boilerplate language concerning the caselaw regarding the standard of review, the burden of proof, the sequential analysis to be followed, the "treating physician rule," and the analysis of subjective complaints as such language has been repeatedly stated in decisions by the judges of this district.

*ALJ's alleged failure to analyze the medical evidence properly*

■ Plaintiff asserts that the ALJ erred by not analyzing or commenting upon the opinion of Dr. Thajudeen [4] who in January 1981 stated that plaintiff "**may** not be able to sit more than one hour in the same position and he **may** not be able to walk for a long distance. He may not be able to crawl or lift heavy weights of more than 30 pounds. He has no impairment of hand functions, he can perform fine manipulating and the other functions of the upper extremities." (Rec. 236) (emphasis added).

The court notes that this opinion was issued years before plaintiff's alleged onset date of disability. In addition, one of plaintiff's treating doctors, Michael H. Kamalian, reported that when he last saw plaintiff on December 28, 1981, which was at the end of the same year in which Dr. Thajudeen's opinion was rendered, plaintiff was told he could resume normal activities. (Rec. 254). Dr. Kamalian stated:

[o]n orthopedic examination of this patient, the examination of his head and neck was within normal limits.

The examination of the upper extremities were within normal limits with no neurovascular deficit and ROM was normal.

The examination of the low back revealed a low back disorder and a back brace was given. The patient was advised to resume normal activities. The examination of the lower extremities did not reveal any neuro-

---

3. Of course, the court does not adopt plaintiff's editorial comments and conclusions in his statement of the evidence, such as the extent of his pain, the weight that should be given to certain reports, and the extent of his disability.

4. Plaintiff did not provide a page reference for the doctor's report.

**564**

logical deficit and SLR was negative at 60 [degrees]. (Rec. 254).

In any event, "the ALJ need not resolve every inconsistency and ambiguity in the record." *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984) (citing *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984)). Based upon the above, the court finds no error in the ALJ's failure to mention the old report written by Dr. Thajudeen.

Interestingly, while plaintiff seeks reliance upon Dr. Thajudeen's opinion that plaintiff may not be able to sit for more than an hour in the same position or walk for a long distance, plaintiff seems to avoid another portion of the doctor's opinion. Immediately after his argument that the ALJ ignored Dr. Thajudeen's opinion, plaintiff contends that the ALJ's analysis of plaintiff's nonexertional impairments is wanting as well. (Pl.'s br. at 17). More specifically, plaintiff notes his testimony that he has difficulty using his hands and that he is unable to use his arms to work overhead. Dr. Thajudeen, however, opined that plaintiff has no impairment of hand functions. (Rec. 236). In addition, as noted above, Dr. Kamalian opined that "[t]he examination of the upper extremities were within normal limits with no neurovascular deficit and ROM was normal." (Rec. 254).

Without giving a page reference, plaintiff also claims that Dr. Horowitz's notes "indicate this [hand] difficulty as well." (Pl.'s br. at 17). Dr. Horowitz's notes, however, merely list plaintiff's claimed symptoms, including his purported inability to raise his hands over his head. (Rec. 169).

In any event, the ALJ expressly and adequately considered Dr. Horowitz's reports and plaintiff's hand complaints. For example, the ALJ noted that "office notes by Dr. Horowitz primarily consist of the claimant's subjective complaints with no evidence of severe limitations in the claimant's upper or lower extremities. There was only one notation on March 4, 1992 that the claimant had complaints of numbness in the right and left hands which was clearly not an ongoing problem. Indeed, on August 30, the claimant reported to Dr. Horowitz, 'you should see the buck I got this year'...." (Rec. 21). Exam-

ining the ALJ's decision as a whole, the court finds that the ALJ adequately considered plaintiff's alleged hand complaints.

■ Plaintiff also contends that notably absent in the ALJ's decision is a **meaningful analysis** of the evidence provided by the Agency's own consultative examiners concerning plaintiff's psychiatric impairment. (Pl.'s br. at 17). Plaintiff asserts that the reports from these physicians support the conclusion that plaintiff is unable to perform any occupation. (Pl.'s br. at 18–20). The court disagrees.

The ALJ very thoroughly reviewed and considered these reports and plaintiff's alleged mental impairment. (Rec. 22–24). The court finds that there is substantial evidence to support the ALJ's implicit finding that plaintiff did not have a nonexertional, mental impairment. Very significantly, as noted by the ALJ, Dr. Boris Gindis reported that "[n]o indications were found of significant psychological impairments that may impose limitations on his ability to perform a full range of age appropriate adaptive and job-related activities." (Rec. 23, 160).

In sum, after a careful review of the ALJ's eleven-page, single-spaced decision and plaintiff's various contentions, the court finds that the ALJ adequately and properly reviewed the medical evidence of record.

*The ALJ's alleged prejudice and improper reliance on plaintiff's poor work record*

Plaintiff contends that the ALJ did not focus on the salient issues of plaintiff's impairments because he was preoccupied with plaintiff's sporadic activities, as well as his lack of a significant earnings record. Plaintiff notes that he testified that he hunted and fished rarely, and that when he did so, he engaged in the activity within the limits of his medical condition. Furthermore, he asserts that the fact that he earned so little in some of the years between 1981 and 1985 underscores the genuineness of his testimony regarding his illness.

In this regard, plaintiff also contends that the ALJ is prejudiced toward individuals who have filed applications under Title XVI of the Social Security Act. In support of this argu-

ment, he cites another action that was pending in the Northern District of New York, *Schaal v. Commissioner of Soc. Security,* No. 93–CV–16, and contends that the decision by ALJ Brown in that case demonstrates that he is prejudiced. Plaintiff claims that since he also filed a SSI application, the conclusion appears to be clear that the ALJ is prejudiced. In addition, he asserts that the questioning by the ALJ regarding plaintiff's "poor work record" reinforces this. (Pl.'s br. at 21–22).

The court notes, however, that by Order dated June 8, 1996, the defendant's final decision in *Schaal* was affirmed, and the civil complaint was dismissed by Chief Judge McAvoy who adopted the Report–Recommendation issued by Magistrate Judge Di Bianco on October 17, 1995.[5] Significantly, Judge Di Bianco found that

> [i]ndicia of credibility such as a claimant's demeanor may properly be considered by the ALJ in assessing a claimant's credibility. *Marcus v. Califano,* 615 F.2d at 27; *see also Fishburn,* 802 F.Supp. at 1028. **A claimant's work history and motivation to work are also indicia of credibility.** *See Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability"); *Nguyen v. Shalala,* 1994 WL 362263, *4 (N.D.Cal.1994) (plaintiff's receipt of AFDC benefits and income represented an " 'obvious disincentive' to work" and "tend[ed] to establish a motive for exaggerating claims [of] inactivity unrelated to physical disability").

The ALJ's consideration of the plaintiff's demeanor and [poor] work history were

not improper. Therefore, the plaintiff's claim that her due process rights were violated by the ALJ's conduct is without merit.

*Schaal v. Commissioner of Soc. Security,* —— F.Supp. —— [1996 WL 904744] (N.D.N.Y. 1995) (Di Bianco, M.J.) (footnote omitted) (emphasis added). Obviously, the court found no merit to that plaintiff's claim of prejudice.

 This court similarly finds that it was not improper for ALJ Brown to consider plaintiff's work record when making his credibility determination and that there is no basis for this plaintiff's claim of prejudice. In addition, it was not improper for the ALJ to consider plaintiff's hunting and fishing activities, and the fact that plaintiff maintained his fishing, deer hunting, and turkey hunting licenses. While plaintiff tries to minimize those activities, a fair reading of the record supports the ALJ's conclusion concerning the extent of plaintiff's involvement.[6]

Furthermore, the court notes that those activities and plaintiff's poor work history were just two of many factors relied upon by the ALJ in discounting plaintiff's credibility. (See Rec. 28, finding 4). The ALJ also relied upon plaintiff's report to Dr. Horowitz on August 30, 1993, when plaintiff was allegedly disabled, that he had been "running a dozer," which the ALJ noted was a reference to the operation of heavy equipment which plaintiff had done in his past relevant work. (Rec. 20). In addition, the ALJ considered the fact that Dr. Horowitz did not render any diagnosis in reference to plaintiff's back complaints. The ALJ also found that objective clinical and laboratory findings have essentially been negative since plaintiff's alleged onset date.[7]

---

**5.** In addition, by Order dated October 23, 1996, Judge McAvoy also denied plaintiff Schaal's motion to vacate or modify the judgment, for judgment on the pleadings in favor of plaintiff, or for a remand to the Commissioner for consideration of new and material evidence. The court notes that Schaal was also represented by Mr. Portnoy.

**6.** For example, in January 1990, when complaining of a cough, plaintiff reported that he had been "coughing since hunting season." (Rec. 170). An office note dated February 12, 1992, reports plaintiff as saying, "You should see the buck I got this year." (Rec. 264). In addition, following an examination on March 28, 1993, Dr.

Paul Chellappa reported that plaintiff "goes to the woods for hunting and fishing." (Rec. 162). Thereafter, on August 30, 1993, plaintiff reported to the doctors at Ellenville Community Hospital that he "overdid it" fishing over the weekend and that he "brought in a fifteen pound bluefish." (Rec. 166, 265–66).

**7.** More specifically, with regard to plaintiff's complaints of back pain, the ALJ stated:

I note that x-rays taken on February 18, 1993 revealed only minimal degenerative joint disease of the cervical spine and Grade I spondylolysis of L5 on L4, which [sic] is consistent with the claimant's age, sex, and activity.... There is no

(Rec. 20). Another factor relied upon was that Dr. Daniel Rosenberg, who consultatively examined plaintiff on April 7, 1993, reported an exaggerated pain response. (Rec. 22). The ALJ noted that during that examination,

palpation of virtually all spinous processes elicited pain. Range of motion of the lumbar spine and functional activities, such as sitting and mobility on the examination table, were within normal limits. However, with formal examination, cervical and lumbar ranges were limited, indicating, subjective responses. Sensation to pinprick was within normal limits; manual muscle testing revealed 5/5 strengths; and deep tendon reflexes were 2 plus and symmetrical. Although his ankles deviated into valgus upon weight-bearing, indicating instability of the ankles, this was not noted by Dr. Horowitz and the claimant reported that he is independent of all activities of daily living....

(Rec. 22). Dr. Rosenberg concluded that "[t]here is no evidence of cervical or lumbosacral radiculopathyl" and that plaintiff's "functional evaluation appears to be inconsistent with the symptomatic complaints." (Rec. 164).

Reliance was also placed upon the fact that Dr. Horowitz did not preclude plaintiff from substantial gainful activity, did not recommend attendance at physical therapy or a pain clinic, and did not refer plaintiff to a specialist. (Rec. 26). In fact, the ALJ also noted that plaintiff had not sought treatment with an orthopedic surgeon or neurosurgeon and had last been seen by an orthopedic surgeon, Dr. Michael H. Kamalian, on December 28, 1981, at which time his examination was within normal limits. (Rec. 26).

■ The determination of a claimant's credibility is the province of the ALJ as long as that finding is supported by the record. *See Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir.1983). In the instant case, it is very clear that the ALJ thoroughly considered plaintiff's credibility, and he cited proper and well-supported reasons for discounting plaintiff's subjective complaints. The court agrees with defendant that the ALJ was not preoccupied with plaintiff's earnings records. (Def.'s br. at 20, n. 7).

The ALJ repeatedly stated in his decision that he did not believe plaintiff and in fact thought plaintiff was lying. This court notes that it has reviewed many decisions written by ALJ Brown and believes this is the first case before this court in which any ALJ has made such a strong statement concerning a claimant's credibility. The court finds no error in the ALJ's determination.

*Listings*

Next, plaintiff contends that he met or equaled sections 1.05C and 12.04 of the Listings and thus should have been granted benefits pursuant to 20 C.F.R. § 404.1520(d) without regard to his age, education, or work experience. Plaintiff asserts that he meets section 1.05C because his CAT Scan revealed an osteophyte formation of the vertebral body of C6 and 7 causing impression on the anterior aspect of the spinal cord, and as

---

evidence in the record that the claimant underwent diagnostic testing, such as MRI, or lumbar myelogram. A CAT scan performed at Ellenville Community Hospital on August 29, 1992 revealed no spinal stenosis or herniated disc at C3–C4 or C4–C5. C6–C7 showed marginal osteophyte formation causing moderate impression on the interior aspect of the spinal cord but there was no conclusive evidence of herniated disc and no spinal stenosis. No other abnormalities were seen.... Further, office notes from Dr. Horowitz spanning the period from October 4, 1989 through August 30, 1993 [report] no evidence of spasm, which is normally associated with functionally limiting back pain. Although the claimant's attorney points out that on February 12, 1992, Dr. Horowitz noted positive straight leg raising test at 40% bilaterally, this is subjective in nature and the remainder of the examination revealed only minimal guarding of the low back and some restrictions with turning the neck to the left. Subsequent office notes by Dr. Horowitz primarily consist of the claimant's subjective complaints with no evidence of severe limitations in the claimant's upper or lower extremities. There was only one notation on March 4, 1992 that the claimant had complaints of numbness in the right and left hands which was clearly not an ongoing problem. Indeed, on August 30, 1993, the claimant reported to Dr. Horowitz, "you should see the buck I got this year" ... Moreover, the claimant reported on August 30, 1993 that he was helped by Relafen....

(Rec. 21–22).

Defendant's brief also thoroughly reviews the minimal objective findings in the record. (Def.'s br. at 14–18).

noted in the consultant's report, plaintiff lacked 20 degrees of cervical rotation to the right and 25 degrees of cervical flexion on the right side. (Rec. 241, 245) (Pl.'s br. at 23). Thus, he allegedly has a significant limitation of motion of the cervical spine, which combined with his degenerative arthritis in his left knee and his affective disorder, should result in a conclusion that he at least equaled section 1.05C.

In addition, plaintiff makes the conclusory assertion that he also meets sections 12.04 and 12.09 of the Listings. (Pl.'s br. at 23–24).

For the reasons stated by defendant, however (Def.'s br. at 16–17), the court finds that the evidence fails to demonstrate that plaintiff has met or equaled the requirements of the Listings. Therefore, defendant's determination to that effect (Rec. 24, 28, finding 3) is supported by substantial evidence.

*Alleged need to call a VE and to obtain additional medical evidence*

Finally, plaintiff contends that defendant did not fulfill her obligation to look fully into the issues and should have obtained testimony from a VE and additional evidence from treating physicians. It is asserted that if the ALJ had any questions about plaintiff's condition and its impact on vocational possibilities, the ALJ should have employed a medical expert to inform him as to whether the affective disorder reported by the consultative examiner affected plaintiff's ability to perform mental tasks. (Pl.'s br. at 24–25). In addition, a VE "would be able to indicate the extent to which degrees in impairment of ability to withstand stress, deal with co-workers and supervisors in a work setting are requisites for any occupation." (Pl.'s br. at 25).

■ There is no basis for any of these contentions. As correctly asserted by defendant, the ALJ found that plaintiff could perform his past relevant work as a security guard. (Rec. 28). There was thus no need for the ALJ to proceed to the final step of the sequential analysis, and, therefore, there it was unnecessary for the ALJ to call a VE to discuss plaintiff's ability to perform other types of work. (Def.'s br. at 21–22).

■ In any event, even though it was unnecessary for him to do so, the ALJ proceeded to the grids and determined that plaintiff was not disabled. (Rec. 29). As shown in the discussion above, there is substantial evidence to support a finding that plaintiff does not have any nonexertional impairments (hand impairments or psychological impairments) which would significantly limit the range of work that would be permitted by his exertional limitations. Consequently, reliance could properly be placed upon the grids without resort to a VE. *Bapp v. Bowen*, 802 F.2d 601, 605–06 (2d Cir.1986).

Finally, the record was fully developed. The court finds no merit to plaintiff's conclusory claim that the ALJ should have obtained additional medical evidence.

### III. CONCLUSION

In sum, the court finds that substantial evidence supports the defendant's final decision and that the defendant applied the correct legal standards. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). Consequently, it is recommended that defendant's final decision be affirmed and the complaint be dismissed. If this recommendation is accepted, it would then follow that plaintiff is not a "prevailing party," and, therefore, plaintiff's request for attorney's fees pursuant to the Equal Access to Justice Act should be denied.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED,** that defendant's final decision be affirmed, the complaint be dismissed, and plaintiff's request for attorney's fees be denied.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

It is further **ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation upon the parties by regular mail.