Tyetta **MEACHEM, on her own behalf and on behalf of all others similarly situated, et al., Plaintiffs,**

v.

**Brian J. WING, as Commissioner of the State of New York Office of Temporary Disability Assistance; Antonia Novello, as Commissioner of the State of New York Department of Health; and James M. McGowen, as Commissioner of the State of New York Department of Labor, Defendants.**

No. 99 Civ. 4630(AGS).

United States District Court, S.D. New York.

Dec. 9, 1999.

Mark Cohan, New York City, NY, Richard E. Blum, The Legal Aid Society, New York City, NY, for plaintiff.

Jose Velez, Assistant Attorney General, Litigation Bureau, New York City, NY, for defendant.

## OPINION AND ORDER

SCHWARTZ, District Judge.

This action was filed by plaintiffs, on behalf of themselves and all others similarly situated, on June 25, 1999. Plaintiffs seek class certification and injunctive relief with respect to various practices of defendants, New York State ("State") officials whose agencies are involved in the disbursement of benefits under certain social services programs. The case is before the Court on defendants' motion to dismiss. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

### I. Statutory and Regulatory Schemes At Issue

At issue in this action are three statutory schemes that provide for financial assistance for low income individuals or households: (A) the Food Stamp program; (B) the Medicaid program; and (C) the Cash Assistance Programs.

### A. Food Stamp Program

"The Food Stamp Act establishes a federally funded, state-administered program that provides nutritional assistance to eligible households." *See Bliek v. Palmer,* 102 F.3d 1472, 1474 (8th Cir.1997); 7 U.S.C. § 2013(a). The purpose of this program is "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011; *see also* 7 C.F.R. § 271.1. Under the program, "eligible households receive food stamp coupons that can be redeemed for food items at retail stores participating in the program." *Bliek,* 102 F.3d at 1474 (citing 7 U.S.C. § 2013(a)). The Department of Agriculture has promulgated various regulations with respect to the program, but the responsibility for administering the program itself has been delegated to state agencies, "and thus the state agencies make the individual eligibility determinations and actually distribute the food stamps to the eligible households." *Bliek,* 102 F.3d at 1474 (citing 7 C.F.R. § 271.4(a)).

Federal regulations provide that a household that is "aggrieved by any action of the State agency which affects the participation of the household" in the Food Stamps Program "may request a 'fair hearing.'" *Jackson v. Jackson,* 857 F.2d 951, 953 (4th Cir.1988) (citing 7 C.F.R. § 273.15(a)). The process provided by such "fair hearings" is regulated by 7 C.F.R. § 273. For example, the state agency administering the program must (i) make certain information accessible to the recipient; (ii) give the recipient an opportunity to be heard, bring witnesses, and cross-examine state witnesses; and (iii) insure that the eventual decision is based on the record and identifies supporting evidence. *See* 7 C.F.R. §§ 273.15(i)(1), 273.15(p)(1), 273.15(p)(2), 273.15(p)(3)(4) & (6), and 273.15(q)(1) & (2).

### B. Medicaid Program

The Medicaid program, established pursuant to Title XIX of the Social Security Act, establishes a joint federal and state cost-sharing system to provide necessary medical services to indigent persons who otherwise would be unable to afford such care. *See Pinnacle Nursing Home v. Axelrod,* 928 F.2d 1306, 1309 (2d Cir.1991); 42 U.S.C. § 1396 *et seq.* Participation in the program is optional, but once a state does elect to participate, it must abide by certain requirements imposed by the relevant statutes and regulations promulgated thereunder. *See Pinnacle,* 928 F.2d at 1309. New York State law has designated the New York State Department of Health as the government agency responsible for administering the Medicaid program. *See* N.Y.Soc.Serv.Law § 363–(a)(1).

As is the case with the Food Stamps program, regulations promulgated with respect to the Medicaid program provide that recipients of Medicaid have the right to a fair hearing whenever the state agency "takes action to suspend, terminate, or reduce" services or eligibility. *See* 42 C.F.R. § 431.200. Federal regulations provide requirements with respect to fair hearings in the Medicaid program that are similar to those required in the Food Stamp program. *See, e.g.,* 42 C.F.R. §§ 431.206, 431.22, 431.242, 431.244.

### C. The Cash Assistance Programs

New York State provides cash assistance to low income individuals by means of, *inter alia,* two state programs: "Family Assistance which is available to pregnant women and families with a minor child, and Safety Net Assistance, which is available to childless adults." *See Reynolds v. Giuliani,* 35 F.Supp.2d 331, 334 (S.D.N.Y.1999) (citing N.Y. Social Services Law §§ 158 and 349.) New York law provides that recipients "may appeal to the department from decisions of social services officials ... [and t]he department shall review the case and give such person an opportunity for a fair hearing thereon." N.Y.Soc.Serv.Law § 22(1). New York State regulations provide standards applicable at these hearings, which are similar

to the federal standards set forth above with respect to Food Stamp hearings. *See* 18 N.Y.C.R.R. pt. 358.

## II. Parties

The named plaintiffs ("plaintiffs") are all individuals who were previously receiving benefits under one or more of the aforementioned social services programs, but whose benefits have been terminated. (Amended Class Action Complaint ("Compl.") ¶¶ 4–19.) Plaintiffs were each denied benefits after statutory "fair hearings" that they contend were not sufficient to comply with applicable statutory and constitutional law.

Defendant Brian J. Wing is the Commissioner of the New York State Office of Temporary and Disability Assistance ("OTDA"). (Compl.¶ 20.) Wing is responsible for, *inter alia,* the administration of the State's Food Stamp program, Family Assistance Program, Safety Net Program, and, in part, the State's Medicaid program. (Compl.¶ 20.) Defendant Antonia Novello is the Commissioner of the New York State Department of Health ("DOH"). (Compl.¶ 21.) She is primarily responsible for, *inter alia,* the administration of the State's Medicaid program. (Compl.¶ 21.) James M. McGowan is the Commissioner of the New York State Department of Labor ("DOL"). (Compl.¶ 22.) He is responsible for the operation of the DOL, as well as for overseeing the welfare-to-work programs for public assistance applicants and recipients. (Compl.¶ 22.)

## III. Facts Common to the Class

The following facts are alleged in the complaint. The City of New York ("City") participates in the disbursement of funds under State social services programs. Recipients of public assistance, food stamps, or medicaid from the City must periodically attend appointments with City employees in order to accomplish a variety of purposes, such as verifying the recipients' eligibility for benefits and evaluating whether a recipient should participate in particular employment programs. (Compl.¶¶ 56, 57.) Failure to attend one of these appointments will cause the relevant City agency to initiate a procedure to discontinue or reduce the recipient's benefits. (Compl.¶ 58.) The appropriate City agency is supposed to mail recipients appointment notices for most, if not all, of these appointments. (Compl.¶ 59.)

If the City agency determines that a recipient has failed to report to a required appointment, the City, before taking action against the recipient, is required to provide the recipient with a notice of intent to terminate or reduce benefits. The notice of intent to terminate is accompanied by an explanation of the recipient's rights (i) to a fair hearing in order to contest the City agency's proposed action, and (ii) to have benefits continue pending the hearing decision. (Compl.¶¶ 59,60.) Among the issues that may be raised at a fair hearing are whether the recipient failed to receive any of the notices that the City welfare agency is required to mail (the "Notices"). (Compl.¶ 61.) Hearings are conducted by State hearing officers who also serve as finders of fact. (Compl.¶ 63.)

## IV. Procedural History

This action was filed on June 25, 1999. Plaintiffs, all of whom have had their benefits altered after fair hearings conducted by persons under the control of defendants, contend that the fair hearings provided to them were deficient. Plaintiffs contend that defendants systematically fail to provide recipients with fair hearings that comply with the requirements set forth in (i) federal and state statutory law; and (ii) the Due Process Clause of the Fourteenth Amendment. Defendants move to dismiss pursuant to, *inter alia,* Federal Rule of Civil Procedure ("Fed. R.Civ.P.") 12(b)(6).

## DISCUSSION

Under Fed.R.Civ.P. 12(b)(6), the Court may dismiss an action when a plaintiff's

complaint fails to state a claim on which relief can be granted. Dismissal is inappropriate, however, unless "it appears beyond a doubt that [plaintiffs] can prove no set of facts that would entitle [them] to relief." *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding a 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiffs and accept the plaintiffs' factual allegations as true. *See Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir.1996); *Staron*, 51 F.3d at 355.

## I. THE AVAILABILITY OF STATE COURT POST–DEPRIVATION REMEDIES DOES NOT REQUIRE DISMISSAL OF THIS ACTION.

A plaintiff is not required to exhaust state remedies before commencing an action pursuant to 42 U.S.C. § 1983. *See Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, defendants contend that because plaintiffs could commence an Article 78 proceeding in the New York State courts in order to challenge the findings of the fair hearing officers contested in this action, this Court cannot find that the state has violated plaintiffs' rights to due process. Defendants cite to the Second Circuit cases of *Marino v. Ameruso*, 837 F.2d 45 (2d Cir.1988) and *Campo v. New York City Employees' Retirement Sys.*, 843 F.2d 96 (2d Cir.1988) in support of this argument. The Court, however, disagrees with defendants, and concludes that *Marino* and *Campo* are distinguishable from the present action.

In *Marino*, the plaintiff "alleged that he was deprived of a property interest in his job as a New York City traffic enforcement agent without procedural due process when an Administrative Law Judge ("ALJ") failed to strike the testimony of a witness at an administrative hearing." *Marino*, 837 F.2d at 46. The Second Circuit, assuming for the purposes of the ap-

peal that the ALJ had made an error of constitutional magnitude, found that the availability of a post-deprivation remedy for the alleged deprivation prevented relief under § 1983. *Id.* at 47. The *Marino* court noted that

[t]he Supreme Court has clearly distinguished between a claim that an established state procedure does not afford procedural due process and a claim that a property right was lost because of a random and unauthorized act by a state actor. In the latter case, the existence of an adequate *postdeprivation* state remedy for the loss affords due process.

*Id.* at 47 (emphasis added). Because the plaintiff in *Marino* was not entitled to pre-deprivation relief, the availability of a post-deprivation Article 78 proceeding was sufficient to comport with due process and to correct any constitutional errors committed by the ALJ at the administrative hearing. *See id.*

Here, for the purposes of analyzing whether the availability of a State Article 78 proceeding requires the dismissal of this action, we will assume as the court did in *Marino* that the fair hearings as implemented by defendants were constitutionally defective. Plaintiffs in this action, however, allege that (i) the hearings conducted by defendants, pursuant to an established state procedure, do not comply with the relevant statutes or afford plaintiffs due process, (ii) that *pre*-deprivation hearings are required, and (iii) that state *pre*-deprivation relief is inadequate. This action is therefore distinguishable from *Marino*, where the court found that the complaint alleged only inadequate post-termination relief because it did not allege that "an established state procedure does not afford procedural due process." *Marino*, 837 F.2d at 46. Here, where plaintiffs do assert that the established state process of conducting fair hearings denies them due process, and allege that they are entitled to certain pre-deprivation remedies under federal constitutional and statutory law, the availability of adequate post-depriva-

tion relief is not relevant, and plaintiffs' claims may proceed.

Nor does the decision in *Campo* change this result. Although the Court in *Campo* dismissed the § 1983 action on the grounds that the plaintiff had access to an Article 78 proceeding, *Campo* also involved a case where insufficient post-deprivation relief was alleged. *See Campo*, 843 F.2d at 100 (stating that "[i]n this case no pre-deprivation hearing was needed or could have taken place.")

Defendants' motion to dismiss plaintiffs' claims on this ground is therefore denied.

## II. PLAINTIFFS' FEDERAL CAUSES OF ACTION ARE NOT BARRED BY THE ELEVENTH AMENDMENT.

Defendants move to dismiss this action based on the Eleventh Amendment's bar to prosecuting an action in federal court against a state. *See, e.g., Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101–103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). There are three types of claims that must be analyzed with respect to the Eleventh Amendment: (i) plaintiffs' claims under the federal constitution; (ii) plaintiffs' claims under federal statutory law; and (iii) plaintiffs' claims under state law.

■ Plaintiffs' claims under the federal constitution are not barred by the Eleventh Amendment. This action is not against New York State itself, but rather is an action for injunctive relief against state officers acting in their official capacities. In *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that an action for injunctive relief against a state official alleging that the official was acting in violation of the federal constitution is not an action against the state. *See id.* at 159–160, 28

S.Ct. 441. "[A] state official may be sued in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment bar." *Dube v. State University of New York*, 900 F.2d 587, 595 (2d Cir.1990) (citing *Papasan v. Allain*, 478 U.S. 265, 276–67, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

Plaintiffs' claims under federal statutory law such as the Food Stamp Act and the Medicaid Act are also not barred by the Eleventh Amendment. The Second Circuit has extended the reasoning of *Ex Parte Young* to apply to suits against state officials alleging violation of federal non-constitutional law. *See Kostok v. Thomas*, 105 F.3d 65, 68 (2d Cir.1997) ("If an act by a state violates the federal Constitution or federal law, however, then the enforcing state actor loses official immunity. . . .")

■ Plaintiffs' claims based on state law, however, are barred by the Eleventh Amendment.[1] The doctrine of *Ex Parte Young* does not apply to a suit against state officials based on state law because such a suit is not necessary to "vindicate the supreme authority of federal law" and "conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106, 104 S.Ct. 900; *see also Kostok*, 105 F.3d at 68 (finding that the plaintiff's "state law claim is barred by the Eleventh Amendment because such a claim cannot be brought against a state even when it has been appended to a federal Constitutional claim") (citing *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 604–05 (2d Cir. 1988)). Therefore, to the extent that plaintiffs' complaint asserts claims arising under state law, the Court declines to exercise supplemental jurisdiction over those

1. This does not mean, however, that plaintiffs' claims only survive with respect to benefits provided under the Food Stamp and Medicaid programs. For example, plaintiffs' claims with respect to State-created and State-administered cash assistance programs may proceed based on the allegations that the fair hearings conducted by those officials administering these programs violates the Due Process Clause of the Fourteenth Amendment. *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

claims and those claims are dismissed.[2]

## III. THE SECTIONS OF THE FOOD STAMP ACT AND MEDICAID ACT RELIED UPON BY PLAINTIFFS MAY BE ENFORCED BY THEM.

Defendants assert that the federal statutes relied upon by plaintiffs do not provide for private rights of action that are enforceable pursuant to 42 U.S.C. § 1983 ("§ 1983"). The Court disagrees.

■ "Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Rights conferred by certain federal statutes are enforceable by means of § 1983, but a plaintiff is required to assert a violation of a "right," not merely a violation of federal law. *Blessing*, 520 U.S. at 340, 117 S.Ct. 1353 (citing *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). Three factors are considered when determining whether a particular statutory provision gives rise to a federal right: (i) whether "Congress . . . intended that the provision in question benefit the plaintiff"; (ii) whether "the right assertedly protected by the statute is so 'vague and amorphous' that its enforcement would strain judicial competence"; and (iii) whether the statute, by using mandatory rather than precatory language, unambiguously imposes a binding obligation upon the states. *See Blessing*, 520 U.S. at 340–341, 117 S.Ct. 1353 (citing *Wright v. Roanoke Redevelopment and Housing Auth.*, 479 U.S. 418, 430, 431–432, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) and *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 510–511, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)). If the Court finds that a federal statute gives rise to a federal right, there is a rebuttable presumption that the right is enforceable under § 1983. *See Blessing*, 520 U.S. at 341, 117 S.Ct. 1353.

Plaintiffs base their causes of action on two federal statutes: the Food Stamp Act and the Medicaid Act.

### A. Food Stamp Act

#### 1. The Fair Hearings Provided for in the Food Stamp Act Were Meant to Protect Plaintiffs

■ The provisions of the Food Stamp Act that require states to conduct fair hearings were enacted by Congress in order to protect the intended recipients of food stamps. *See, e.g., Moore v. Perales*, 692 F.Supp. 137, 144, 145 (E.D.N.Y.1988) (concluding that the Food Stamp Act creates a private right of action permitting food stamp recipients to enforce compliance with, *inter alia*, the fair hearing provisions of the Act); *Haskins v. Stanton*, 794 F.2d 1273, 1275 (7th Cir.1986) (same). The fair hearings provisions set forth a variety of requirements that are plainly intended to accord a recipient the opportunity to be heard and to prevent a recipient from losing benefits to which the recipient is entitled. *See, e.g.*, 7 C.F.R. § 273.15.

Defendants reliance on *Blessing* to support a contrary result is misplaced. The Supreme Court in *Blessing* found that a particular section of Title IV–D of the Social Security Act did not confer a private right of action because, *inter alia*, that section was not intended to create a federal right in favor of benefits recipients. *See Blessing*, 520 U.S. at 343–345, 117 S.Ct. 1353. The Court was addressing whether a private plaintiff could enforce a broad provision requiring that the state "substantially comply" with the federal regulatory scheme, which included provisions detailing required administrative procedures.

**2.** *See, e.g.*, Compl. ¶ 46 (alleging that "New York State guarantees the right to a fair hearing to any person aggrieved by a decision of a local social services district.") Nothing in this decision should be interpreted as barring these state law claims from being asserted in state court.

*See Blessing,* 520 U.S. at 334–335, 117 S.Ct. 1353. The Court in *Blessing* concluded that such a broad provision was not intended to protect individual recipients, but rather was "simply a yardstick for the Secretary to measure the systemwide performance of a State's Title IV–D program." *Blessing,* 520 U.S. at 343, 117 S.Ct. 1353. As opposed to those provisions of Title IV–D that were meant to protect individual rights, "the substantial compliance standard is designed simply to trigger penalty provisions that increase the frequency of audits and reduce the State's AFDC grant by a maximum of five percent." *Id.* at 344, 117 S.Ct. 1353. Rather than the broad scope attributed to the decision by defendants, the Court in *Blessing* did "not foreclose the possibility that some provisions of Title IV–D give rise to individual rights." *Blessing,* 520 U.S. at 345, 117 S.Ct. 1353.

Here, at issue is a federal statutory and regulatory scheme that details the procedures to be used in fair hearings and accords certain protections to food stamp recipients contesting the modification of their benefits. As opposed to the "substantial compliance" standard of Title IV–D, which required an examination as to "the aggregate services provided by the State, not to whether the needs of any particular person have been satisfied", *Blessing,* 520 U.S. at 343, 117 S.Ct. 1353, whether or not a fair hearing has been conducted properly depends solely on whether one particular recipient's benefits have been modified or terminated without the process that is required. The Court concludes that the provisions requiring that states conduct fair hearings in conformance with certain standards were certainly aimed at protecting individuals such as plaintiffs.

> 2. *The Requirements for Fair Hearings in the Food Stamp Act Are Not So "Vague and Amorphous" That Their Enforcement Would Strain Judicial Competence*

The Food Stamp Act and its implementing regulations set forth in great detail the requirement that the states conduct fair hearings and what the required standards are for those hearings. First, 7 U.S.C. § 2020(e)(10) provides that the state agency is required to provide "a fair hearing and a prompt determination thereafter to any household aggrieved by an action of the State agency...." Second, as stated previously, 7 C.F.R. § 273.15 lists numerous procedural protections that must apply in these fair hearings, including that the state: (i) "make available without charge the specific materials necessary for a household or its representatives to ... prepare for a hearing," 7 C.F.R. § 273.15(i)(1); (ii) give the recipient an adequate opportunity to "examine all documents and records to be used at the hearing at a reasonable time before the hearing as well as during the hearing", 7 C.F.R. § 273.15(p)(1); (iii) give the recipient an opportunity to "present the case or have it presented by a legal counsel or other representative", 7 C.F.R. § 273.15(p)(2); (iv) give the recipient an opportunity to bring witnesses, "submit evidence ... and advance arguments without due interference", 7 C.F.R. § 273.15(p)(3)(4) & (6); and (v) give the recipient the opportunity to "question or refute any testimony or evidence, including an opportunity to confront and cross-examine adverse witnesses", 7 C.F.R. § 273.15(p)(5). Additionally, 7 C.F.R. § 273.15(p) provides that a *pro se* recipient "may not be familiar with the rule of order and [that] it may be necessary to make particular efforts to arrive at the facts in the case in a way that makes the household feel most at ease." Finally, the hearing decision must, *inter alia,* (i) be based on the record developed at the hearing, and (ii) "summarize the facts of the case, specify the reasons for the decision, and identify the supporting evidence." *See* 7 C.F.R. §§ 273.15(q)(1) & (2). These standards, far from being "vague" or "amorphous", are very specific, clearly-articulated, and easily interpreted, and the Court finds that they will easily accommodate judicial enforcement.

### 3. The Food Stamp Act Uses Mandatory Rather than Precatory Language.

The Food Stamp Act unambiguously requires that states make use of fair hearings that meet the standards provided in the implementing regulations. Mandatory language is found, for example, in 7 U.S.C. § 2020(e), which provides that "[t]he State plan of operation ... *shall* provide, among such other provisions as may be required by regulation—... (10) for the granting of a fair hearing...." (emphasis added). Similar language—also using the word "shall" with respect to procedural requirements of the Food Stamp Act, was found to be sufficient to support a private right of action in *Reynolds v. Giuliani*, 35 F.Supp.2d 331, 340–341 (S.D.N.Y.1999) (Pauley, J.). In *Reynolds*, Judge Pauley was examining, *inter alia*, 7 U.S.C. § 2020(e)(2)(B), which provides that

> a State agency—(i) shall provide timely, accurate, and fair service to applicants for, and participants in, the food stamp program; (ii) shall develop an application containing the information necessary to comply with this chapter; (iii) shall permit an applicant household to apply to participate in the program on the same day that the household first contacts a food stamp office in person during office hours; (iv) shall consider an application that contains the name, address, and signature of the applicant to be filed on the date the applicant submits the application.

Judge Pauley found that this section, among others cited by the plaintiffs, was one that "Congress undoubtedly intended to benefit individuals such as the plaintiffs, *and which impose[s] unambiguous obligations* on participating State agencies." *Reynolds*, 35 F.Supp.2d at 340–341 (emphasis added). This Court reaches the same result in the instant action with respect to the provisions of the Food Stamp Act requiring fair hearings and providing for implementing regulations that regulate the procedures to be followed in such hearings.

Therefore, the Court finds that plaintiffs may assert claims pursuant to § 1983 based on defendants' alleged violations of the sections of the Food Stamp Act that guarantee them fair hearings in accordance with the standards provided for by federal law.

### B. Medicaid Act

#### 1. The Provisions of the Medicaid Act Providing For Fair Hearings Are Meant to Protect Plaintiffs.

■ For the same reasons as stated above with respect to the fair hearings requirement in the Food Stamp Act, the fair hearings provided for in the Medicaid Act were meant to protect recipients such as plaintiffs. 42 U.S.C. § 1396a(a)(3) requires that the state "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness...." 42 C.F.R. § 431.200 "prescribes procedures for an opportunity for hearing if the Medicaid agency takes action to suspend, terminate, or reduce services." As with the similar provisions in the Food Stamp Act, these provisions are obviously meant to accord individual recipients an opportunity to be heard and the right to contest an unwarranted modification or termination of their benefits.

#### 2. The Requirements for Fair Hearings in the Medicaid Act Are Not So "Vague and Amorphous" That Their Enforcement Would Strain Judicial Competence.

The standards required for Medicaid fair hearings are clearly set forth in the applicable statutes and regulations and would not be difficult for the courts to enforce. In fact, the implementing regulations specifically invoke the due process standard used by the Supreme Court in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct.

1011, 25 L.Ed.2d 287 (1970) as one requirement for Medicaid fair hearings. *See* 42 C.F.R. § 431.205. A court is surely able to assess compliance with this standard since the standard itself was designed for courts to apply.

Additional standards for Medicaid fair hearings, as set forth in the implementing regulations, provide that, *inter alia,* the prospective recipient of Medicaid benefits must be given the opportunity to:

(a) Examine at a reasonable time before the date of the hearing and during the hearing:

(1) The content of the applicant's or recipient's case file; and

(2) All documents and records to be used by the State or local agency or the skilled nursing facility or nursing facility at the hearing;

(b) Bring witnesses;

(c) Establish all pertinent facts and circumstances;

(d) Present an argument without undue interference; and

(e) Question or refute any testimony or evidence, including opportunity to confront and cross-examine adverse witnesses.

*See* 42 C.F.R. § 431.242. The fair hearing decision must be "based exclusively on evidence introduced at the hearing," and must summarize the facts and identify the regulations and evidence in support of the decision. 42 C.F.R. § 431.244(a), (d) & (e).

These standards are not too "vague and amorphous" as to permit effective judicial enforcement, but rather are specific, clear, and easily understood and interpreted by the courts.

### 3. The Medicaid Act Uses Mandatory Rather than Precatory Language.

42 U.S.C. § 1396(a)(3) provides that the "State plan for medical assistance *must* — ... (3) provide for granting an opportunity for a fair hearing...." (emphasis added). The implementing regulations use similar language. *See, e.g.,* 42 C.F.R. § 431.205(d) ("The hearing system *must* meet the due process standards set forth in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and any additional standards specified in this subpart") (emphasis added); 42 C.F.R. § 431.244(a) ("Hearing recommendations or decisions *must* be based exclusively on evidence introduced at the hearing ...") (emphasis added).

Other courts have similarly reached results that either explicitly or implicitly endorse the view that 42 U.S.C. § 1396a(a)(3) may support a private right of action by benefits recipients pursuant to § 1983. *See Cramer v. Chiles,* 33 F.Supp.2d 1342, 1350–1352 (S.D.Fla.1999); *Daniels v. Wadley,* 926 F.Supp. 1305, 1310 (M.D.Tenn. 1996), *vacated in part on other grounds by Daniels v. Manke,* 145 F.3d 1330, 1998 WL 211763 (6th Cir.1998).

The Court concludes that the aspects of the Medicaid Act that provide for fair hearings and regulate their procedures satisfy the requirements of *Blessing* and support a private right of action.

## IV. THE COURT WILL NOT ABSTAIN FROM PROCEEDING WITH THIS ACTION.

Defendants move the Court to abstain from proceeding with this action under the doctrines articulated in: (1) *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and (2) *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The Court declines to do so.

### A. Younger Abstention is Not Appropriate in this Action.

■ "Under *Younger* and its progeny, a federal court should abstain from exercising jurisdiction where three factors are present: (1) there is an ongoing state criminal proceeding; (2) the claim raises important state interests; and (3) the state proceedings provide an adequate opportu-

nity to raise the constitutional claims." *Schlagler v. Phillips*, 166 F.3d 439, 442 (2d Cir.1999) (citing *Hansel v. Town Court of Springfield*, 56 F.3d 391, 393 (2d Cir.1995) (citing *CECOS Int'l, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir.1990))). The doctrine has also been extended to apply when there exists an ongoing state civil or administrative proceeding. *See, e.g., Doe v. State of Connecticut Dep't of Health Servs.*, 75 F.3d 81, 85 (2d Cir.1996) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 628, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (finding abstention to be warranted where private· school sought to enjoin ongoing state disciplinary proceedings against it)). "*Younger* abstention is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." *See Schlagler*, 166 F.3d at 442 (internal citations omitted).

▮ The critical factor here, however, is that there is no state proceeding pending-criminal or civil, that would require abstention. Although plaintiffs presumably *could* challenge the administrative decisions terminating their benefits by commencing an Article 78 proceeding in state court, "[t]he mere fact that a state court of general jurisdiction can entertain any claim between two parties properly before it is too insubstantial a basis for compelling a party which wishes to bring federal constitutional claims in federal court to present those claims to a state court instead." *Brooklyn Institute of Arts and Sciences v. City of New York*, 64 F.Supp.2d 184, 195 (E.D.N.Y.1999). *See also CECOS*, 895 F.2d at 72 ("A federal court need not stay its jurisdictional hand when there is no state action pending at the time the federal suit is filed, even if there is a substantial likelihood that a state proceeding will be instituted in the future to vindicate the state's interests.")

Defendants correctly point out that if plaintiffs had *appellate* remedies available to them, an ongoing state court proceeding would exist for the purposes of *Younger*. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The case of *Huffman v. Pursue* involved a party who was appealing from an Ohio lower court to the Ohio appellate courts. *Id.* at 608, 95 S.Ct. 1200. The *Huffman* court concluded that because the plaintiff had not exhausted his state court appeals, abstention was appropriate because "[v]irtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings." *Id.*

Here, however, there is no ongoing state appellate proceeding. An Article 78 proceeding is not an "appeal" but rather a new proceeding challenging a decision by an administrative body or officer. *See* N.Y.C.P.L.R. § 7804 (characterizing Article 78 proceeding as a "special proceeding" and specifying where such a proceeding may be "brought"); *see also* N.Y.C.P.L.R. § 7801 (providing that an Article 78 proceeding cannot be used to challenge a determination that "can be adequately reviewed by appeal to a court or to some other body"). Defendants point the Court to no case holding that the availability of an Article 78 proceeding in state court should be tantamount to an unexhausted appeal for the purposes of *Huffman* and *Younger*.

Additionally, the Court's conclusion that no state proceeding is "ongoing" is strengthened by the fact that, while plaintiffs' administrative remedies were pre-deprivation remedies, a hypothetical Article 78 proceeding would be a post-deprivation remedy. Defendants do not allege that plaintiffs' would be entitled to receive their challenged benefits during the pendency of an Article 78 proceeding.

The Court therefore concludes that there are no relevant state proceedings that should be considered "ongoing" for the purposes of the *Younger* doctrine, and

that abstention is therefore inappropriate.[3]

### B. Burford Abstention is Not Appropriate in this Action

■ The *Burford* abstention doctrine holds that, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies" in two situations:

> (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*Tribune Co. v. Abiola*, 66 F.3d 12, 15 (2d Cir.1995) (quoting *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI*")). *See also Burford*, 319 U.S. at 318–324, 63 S.Ct. 1098. Here, defendants contend that the second situation is applicable—that this action threatens to disrupt New York State's efforts to establish a coherent administrative scheme.

■ Deciding whether to abstain under *Burford* requires the court to balance "the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining uniformity in the treatment of an essentially local problem." *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (internal quotations and citations omitted). "This balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" *Quackenbush*, 517 U.S. at 728, 116 S.Ct. 1712 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

■ This is not the extraordinary case that requires abstention under *Burford*. This action involves issues that are not "essentially local" but rather involve federal funds and federal regulation in an area in which the federal government has taken a keen interest. In *Burford*, the federal interest was extremely minimal, "involving solely the question whether the [Texas Railroad Commission] had properly applied Texas' complex oil and gas conservation regulations." *NOPSI*, 491 U.S. at 360, 109 S.Ct. 2506 (citing *Burford*, 319 U.S. at 331, n. 28, 63 S.Ct. 1098). Here, by contrast, important federal interests are implicated such as those embodied in the Fourteenth Amendment's due process clause, the Food Stamp Act, and the Medicaid Act. *See, e.g., Orozco v. Sobol*, 703 F.Supp. 1113, 1121 (S.D.N.Y.1989) (concluding that *Burford* abstention was unwarranted where the plaintiff's § 1983 action challenged the constitutionality of aspects of New York's Education Law); *cf. Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir.1998) (stating that one factor supporting abstention under *Burford* is when the action would require the Court to give one or another debatable construction to a state statute) (citing *Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir.1992)). Further, proceeding with this action is not as intrusive as it might be in a different substantive area because federal oversight of the State's administrative scheme for distributing Food Stamp and Medicaid benefits already occurs via the regulatory scheme set up by the Food Stamp and

---

**3.** Further, any other interpretation would be extremely questionable given the holding in *Patsy v. Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) that a plaintiff need not exhaust all state court remedies prior to instituting an action based on 42 U.S.C. § 1983.

Medicaid Acts. The Court therefore concludes that exercising jurisdiction over this action is appropriate under *Burford* and is entirely consistent with the Supreme Court's federalism jurisprudence.

## V. PLAINTIFFS' ALLEGATIONS WITH RESPECT TO THE "MAILING AFFIDAVITS" STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

 Defendants assert that plaintiffs' claims with respect to the use of mailing affidavits does not state a claim upon which relief may be granted. The basis for plaintiffs' "mailing affidavit" claims, as asserted in the complaint, is as follows.

When the issue in dispute at a fair hearing is whether a recipient actually received a Notice from the appropriate City agency, the "City welfare agency does not present the testimony of the person who mailed the notice ... [but rather] routinely submits a series of affidavits signed by employees of the City welfare agency ("mailing affidavits")." (Compl.¶ 65.) These mailing affidavits are submitted to demonstrate that the City welfare agency has a procedure for mailing the particular type of Notice at issue. (Compl.¶ 66.) The City welfare agencies generally do not offer direct proof that the Notice in question was actually mailed. (Compl.¶ 67.) The State fair hearing officers generally deem the mailing affidavits to establish a presumption in favor of mailing and to satisfy the City agencies' burden of proof. (Compl.¶ 68.) Plaintiffs assert, however, that this presumption is usually established by a hearing officer without determining (i) whether the affidavits cover the period in question; (ii) whether the affidavits are internally consistent; (iii) whether the process described actually corresponds to the documents presented; and (iv) whether the correct address was used. (Compl.¶ 69.) Plaintiffs further allege that pro se litigants are rarely shown these affidavits at the fair hearing. (Compl.¶ 70.)

Plaintiffs' principal claim with respect to the mailing affidavits is that defendants' excessive reliance on these affidavits violates plaintiffs' procedural rights as guaranteed by federal statutory law and the Due Process Clause of the Fourteenth Amendment. Plaintiffs contend that the hearing officers do not adequately examine these affidavits to determine their sufficiency, nor do they allow recipients the opportunity to rebut the presumption of mailing and receipt. (Compl.¶ 72.)

Defendants contend on this motion that the mailing affidavit claims are insufficient as a matter of law because, under federal law, "[t]he determination of a claimant's credibility is the province of the ALJ as long as that finding is supported by the record." *Dombrowski v. Chater,* 960 F.Supp. 558, 566 (N.D.N.Y.1997) (citing *Dumas v. Schweiker,* 712 F.2d 1545, 1552 (2d Cir.1983)). Plaintiffs' claims do not, however, challenge the rights of defendants to make use of mailing affidavits in administrative hearings as one element of the final determination, or defendants' right to provide that the mailing affidavits establish a presumption of delivery to the recipient. Rather, plaintiffs assert that (i) a systemic failure exists, put in place by defendants, which prevents plaintiffs from marshaling evidence to challenge the presumption of mailing and receipt, (Pl.Mem. at 19); and (ii) defendants' hearing officers routinely fail to determine whether the mailing affidavits are, *inter alia,* internally inconsistent or out of date, (Pl.Mem. at 20). These claims are sufficient to survive this motion to dismiss because they involve alleged systemic failures of the State's administrative scheme for conducting fair hearings to meet the standards required by federal constitutional law and statutory law. Similar allegations of systemic failures to comply with federal law are routinely found by courts to state a claim upon which relief may be granted. *See, e.g., Reynolds v. Giuliani,* 35 F.Supp.2d 331, 346—347 (S.D.N.Y.1999) (awarding a preliminary injunction to

plaintiffs who alleged a systemic failure by a New York State administrative scheme to meet the standards required by the Due Process Clause and the Food Stamp and Medicaid Acts); *Morel v. Giuliani,* 927 F.Supp. 622, 639–640 (S.D.N.Y.1995) (awarding preliminary relief to plaintiffs who alleged systemic failure of New York State administrative scheme too meet standards required by the Due Process Clause and federal statutes, including Food Stamp Act).[4]

## VI. THE COMMISSIONER OF THE NEW YORK CITY HUMAN RE-SOURCES ADMINISTRATION IS NOT AN INDISPENSABLE PAR-TY.

■ Defendants move to dismiss the action on the grounds that the Commissioner of the New York City Human Resources Administration ("HRA") is an indispensable party and has not been named. *See* Fed.R.Civ.P. 12(b)(7), 19(a). The action names only New York State defendants, not any representative of the City of New York. An indispensable party under Fed.R.Civ.P. 19(a) is a party (i) in whose absence complete relief cannot be accorded among those already parties; or (ii) who claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (a) as a practical matter impair or impede the person's ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring multiple or otherwise inconsistent obligations by reason of the claimed interest.

Complete relief may be accorded to plaintiffs absent the City's and the Com-

missioner of HRA's involvement in this action. Plaintiffs seek relief in their complaint only against hearing officers who are state officials and employees of defendants. (*See, e.g.,* Compl. at 1 ("Plaintiffs bring this action on behalf of themselves and a class of all other public assistance recipients similarly situated who have requested or will request an administrative hearing from defendants to review a determination by [HRA] ... to terminate or reduce public assistance")). Defendants contend that the HRA Commissioner is a necessary party because the HRA "issued the challenged sanction and otherwise provides and administers the ... benefits which plaintiffs contend were improperly discontinued," (Def.Mem. at 31). This, however, is beside the point. In this action, plaintiffs do not directly challenge the City's decision to terminate their benefits—rather, they challenge the decisions of the state hearing officers' in upholding the HRA's decisions to terminate. Similarly, plaintiffs do not challenge the City's methods for mailing out Notices, or the conduct of HRA officials at the fair hearings—they merely challenge the state hearing officers' alleged automatic acceptance of the City's evidence.

Further, if any relief were ultimately required of the City, it would be available by means of an injunction against defendants. Under New York's public assistance laws, if the State defendants order the City to take some action, the City would be obligated to follow. *See Beaudoin v. Toia,* 45 N.Y.2d 343, 347, 408 N.Y.S.2d 417, 380 N.E.2d 246 (1978) ("In New York State, the social services program is a State program, administered

---

4. Defendants submit the affidavit of Henry S. Pedicone, who is a hearing officer in support of their motion to dismiss. Pedicone asserts and provides evidence suggesting that, despite plaintiffs' allegations, fair hearing officers often accept recipients' assertions that Notices were not received, and, in fact, that this tendency to accept the recipients' testimony is an ongoing dispute between the OTDA and the New York City Human Resources Administra-

tion. Pedicone attaches two written decisions of hearing officers that appear to accept recipients' contentions that they failed to receive the Notices. (Exhibit 3 to Pedicone Aff.) This evidence, however, does not change the result on this motion because, on a motion to dismiss, all facts are construed in the light most favorable to the non-movant. This affidavit will be considered more fully should defendant move for summary judgment.

through the 58 local services districts under the general supervision of the State Department of Social Services ... *the local commissioners act on behalf of and as agents of the State.*") (emphasis added); *Cleary v. Perales,* 191 A.D.2d 209, 594 N.Y.S.2d 207, 209 (1st Dep't 1993) (concluding that the "petitioner's entitlement to attorney's fees does not apply to the City respondent, whose denial of the [medicaid] benefit was determined as an agent of the State respondent, which bears the final responsibility"); *Weinberg v. Perales,* 121 A.D.2d 729, 504 N.Y.S.2d 456, 457 (2d Dep't 1986) (finding that local commissioner could not challenge decision of State commissioner with respect to recipients' right to medicaid benefits because federal law requires that medicaid be administered by a single state agency and federal regulations "provide that a local agency must not have authority to review, change or disapprove the decision of the single state agency"); *see also* 18 N.Y.C.R.R. § 387.0; N.Y.Soc.Serv.Law § 363–a.

The Court also concludes that the City's interests will not be harmed in a manner recognized by Fed.R.Civ.P. 19(a) by plaintiffs' failure to add the Commissioner of HRA as a defendant in this action. The City's interests in this action derive principally from its activities as the designee of State authority, and the State's involvement in this litigation will fully protect the City's interests as its agent. *Cf. Beaudoin,* 45 N.Y.2d at 347, 408 N.Y.S.2d 417, 380 N.E.2d 246. As stated previously, the hearing officers whose conduct is challenged in this action are State officers, and the City's procedures, such as those for mailing Notices or presenting evidence at the fair hearings, are not directly challenged by plaintiffs. Rather, the State defendants' alleged policies in conducting the fair hearings and accepting the City's evidence provide the bases for plaintiffs' causes of action. Finally, the Court notes that the City is free to file a motion to intervene if it so chooses.

Defendants' motion to dismiss for failure to join a necessary party is therefore denied.

### CONCLUSION

For the reasons stated, defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' claims are dismissed to the extent that they arise under New York State law. In all other respects, defendants' motion to dismiss is DENIED.

SO ORDERED.