**Robin DUTIL Plaintiff,**

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

**No. 2:04 CV 513 FTM DNF.**

United States District Court,
M.D. Florida,
Ft. Myers Division.

Dec. 9, 2005.

---

Chantal Harrington, Carol Avard, Cape Coral, FL, for Plaintiff.

## ORDER [1]

FRAZIER, United States Magistrate Judge.

The Plaintiff applied for Supplemental Security Income ("SSI") payments under Title 42 U.S.C. Sec. 405(g) and 42 U.S.C. 1383(c)(3) of the Social Security Act on October 11, 2000.[2] (Tr. 125–29). The claim was denied initially and upon consideration. On July 11, 2003, a hearing was held before Administrative Law Judge Danvers E. Long. On October 2, 2003, ALJ Long issued his decision which denied the Plaintiff benefits. (Tr. 22–28). The Plaintiff filed a Request for Review of the hearing decision and the Appeals Council denied same on August 19, 2004, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981,

---

1. Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated March 8, 2005.

2. Plaintiff's counsel testified at the hearing that the Plaintiff has applied for disability on three different occasions and has two prior applications. The first was filed in August of 1993 and the second October of 1997. The first and second application alleged the same onset date of 1986. Plaintiff's counsel made a technical motion to reopen the second application, under 42 U.S.C. 405(g) only to add the additional evidence to this third application. Plaintiff noted that "I felt at that time I could not fight this fight, due to that fact I was trying to make a huge decision (sic) of whom (sic) was going to do my reconstructive surgery and was under tremendous stress. I understand it can be denied a time or too (sic)." (Tr. 141).

422.210 (2004). (Tr. 5–8). For the reasons set out herein, the decision is **REVERSED and REMANDED.**

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda.

## I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505–404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

On October 18, 2004, the Plaintiff filed her application for SSI and alleged disability beginning on January 1, 1986. The Decision of ALJ Long, dated October 2, 2003, denied the Plaintiff's claim for benefits. (Tr. 28). At Step 1, the ALJ found the Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability.[3] (Tr. 27). At Step 2, the ALJ found that the medical evidence establishes that the Plaintiff has chronic lumbar, cervical and thoracic sprain. (Tr. 23). At Step 3, the ALJ found that during the period in question, the Plaintiff did not have an impairment or combination of impairments which met the criteria of any of the listed impairments described in Appendix 1 of the Regulations [20 C.F.R., Part 404, Subpart P, Appendix 1]. The ALJ also did not find Plaintiff's testimony fully credible regarding her limitations and that the Plaintiff has the residual functional capacity to perform a significant range of sedentary work. At Step 4, the ALJ determined Plaintiff was unable to perform any of her past relevant work. [Tr. 27]. Accordingly, the ALJ did not consider Step 5 and found Plaintiff was not disabled. (Tr. 28).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir.1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Walden v. Schweiker,* 672 F.2d 835, 838–9 (11th Cir. 1982).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan,* 937 F.2d 580, 584 n. 3 (11th Cir.1991); *Barnes v. Sulli-*

---

3. After the date of alleged onset of disability, the claimant worked various part-time jobs with earnings well below substantial gainful activity levels.

*van,* 932 F.2d 1356, 1358 (11th Cir.1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord, Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Review of Facts and Conclusions of Law

### A. Background Facts:

The Plaintiff was born on December 5, 1961, and was forty-one years old at the time of the ALJ's decision. The Plaintiff has a high school education and past work experience as a cashier, post office clerk, resort guest relations employee, and data entry clerk.

The Plaintiff alleged she became disabled beginning October 1, 1986. The Plaintiff had bilateral implants placed in her jaws in 1984. In 1991, the implants were recalled and were removed later that year. The Plaintiff completed a Disability Report Adult Form for the Social Security Administration on October 11, 2000, where she wrote: "1984, Bilateral implants in jaws—recalled in '91, removed in [sic] 3/91; '98 total jaw reconstruction, fibromyalgia—positive ANA inflammation auto immune disease—MRI for possible MS— B12 shots monthly—possibly nerve damage." (Tr. 132). The Plaintiff testified at the hearing that the three surgeries involving her jaw caused her body severe trauma which resulted in the diagnosis of fibromyalgia. (Tr. 66).

*Medical History:*

1992 Dr. M.A. Lawrence, Oral Surgeon. Dr. Lawrence's notes reveal that Plaintiff needed a maxillary inter occlusal splint for treatment of chronic jaw pain secondary to placement of Teflon Proplast Implants. The implants were removed but continued to give Plaintiff headaches and pain. "Treatment is necessary to alleviate jaw pain and headaches." (Tr. 182).

5/3/95 Cheryl Weinstein Ph.D. Dr. Weinstein examined Plaintiff for a neuropsychological consultation. (Tr. 185). Several memory and intelligence tests were given to the Plaintiff. However, only the first page of the report is contained in the transcript. The remaining pages are missing.[4] (Tr. 185).

4/3/97 Dr. J.J. Bennett performed a CT scan of Plaintiff's bilateral temporal mandibular joints. *Impression:* "Very severe arthritic changes of the temporomandibular joints with marked condylar irregularity and hypertrophy. The changes are worse on the left than right. No anterior translation of either condyle with attempts at opened mouth imaging. No implants identified." (Tr. 187)

5/29/97 Dr. David A. Keith examined Plaintiff for temporal mandibular joint pain. Plaintiff reported a decrease in her range of motion and headaches. An MRI revealed extensive degenerative changes. Dr. Keith opined that the Plaintiff was developing bony ankylosis and that she would require the release of the ankylosis. (Tr 188–189). A referral letter dated October 15, 1997, revealed she had gradually lost mobility of her mandible from an ini-

---

4. In her statement of facts, but not in her argument, the Plaintiff refers to the missing pages in an exhibit in the certified record. Pages do appear to be missing from Exhibit 3F, however, that exhibit was not relevant to the ALJ's decision, nor should it be considered here. Plaintiff applied for SSI benefits on October 11, 2000. The Commissioner is only required to develop the medical history for the twelve month period prior to the filing of an SSI claim or, in this case, to October 11, 1999. Exhibit 3F, is dated May 3, 1995, well before the relevant period.

tial opening of 35 mm. one month post-op, to 15 mm. (Tr. 179)

12/8/97 Dr. M. Franklin Dolwick, oral and maxillofacial surgeon examined Plaintiff. The examination revealed a maximal opening of 16 mm., and joint pain upon opening. Dr. Dolwick recommended bilateral arthroplasties with temporalist muscle flap to correct her bilateral TM joint fibrous ankylosis. (Tr. 194–196).

12/27/97 According to medical records from Three Rivers Family Practice, Plaintiff had a lumbosacral spine series performed. The report read: There is a thoracolumbar dextroscoliosis demonstrated. Minimal narrowing of the disc at L4–5 is seen. No fractures or subluxations or other significant abnormalities are demonstrated. (Tr. 313).

7/8/98 The Plaintiff underwent a second CT scan of her bilateral TM joints due to limited mouth opening. The CT scan revealed severe secondary arthritic changes of the joints, with little interior translation with attempts at opening. According to a letter dated August 18, 1998; the Plaintiff had increasing difficulty opening her mouth and constant TM joint pain. (Tr. 192). Dr. Dolwick recommended bilateral TM joint arthoplastis with bilateral temporalis flaps.

9/30/98 The Plaintiff was diagnosed with recurrent laryngospasm possibly related to vocal cord dysfunction or laryngeal edema. (Tr. 309). On October 16, 1998, Dr. Lang and Dr. Dolwick performed a bilateral TM joint gap arthropolasty. (Tr. 197–201).

5/7/99 The Plaintiff's CT scan again showed severe arthritic changes. (Tr. 303). Lab results on July 12, 1999, revealed a positive ANA (inflammation auto immune disease) with a "speckled" result.

8/8/99 The Plaintiff was examined by Dr. Steven R. Goldring. Dr. Goldring's Assessment: "She has done well s/p (sic)

revision of Teflon proplasty implants. Despite the positive ANA, she has no evidence of an underlying autoimmune disorder".... "Although she has been told that she has fibromyalgia, she has no specific features of trigger points or other findings that would support this diagnosis". (Tr. 314).

3/7/00 The Plaintiff reported numbness on the left side of her head and her left calf on and off, with hand tremors of her left hand and severe anxiety. The Plaintiff was very anxious and tearful and was diagnosed with parathesias, anxiety, PMS and multiple TM joint symptoms. (Tr. 215).

3/27/00 Karen B. Bassetti, D.O., examined the Plaintiff and noted slight tremulousness of the right hand. The Plaintiff was diagnosed with right hand tremor, parasthesias, history of elevated ANA and menometrorrhagia. Lab results showed the Plaintiff again had a positive ANA and an elevated sedimentation rate. It was noted that her B12 blood work revealed an abnormally low result. (Tr. 213, 223, 225, 227).

4/9/01 The Plaintiff returned to Dr. Bassetti to discuss body aches. The Plaintiff stated she had horrible week with low grade fevers up to 100 degrees. Dr. Bassetti ordered blood work and further rheumatology consults due to the symptoms of (unclassified at that point) rheumatic disease.

5/4/00 The Plaintiff was evaluated by Dr. Allen Lifton, neurologist. Neurological examination revealed mild spasticity and mild left hemiparesis and bilateral Babinski's sign. The Plaintiff had fairly impressive nystagmus and her eye movements were somewhat choppy. Dr. Lifton was concerned about the possibility of a primary demyelinating illness such as multiple sclerosis or an autoimmune process. On May 22, 2000, Dr. Lifton advised the Plaintiff that he did not see evidence of

multiple sclerosis or a specific autoimmune disorder but that she should be seen by a rheumatologist. (Tr. 230).

1/2/01 The Plaintiff was evaluated by Dr. Robin Ikeman, a rheumatologist, upon referral by the state agency. The Plaintiff advised of her history of musculoskeletal pains, her headaches, intermittent numbness of the left side of her head and left leg. The Plaintiff had a long history of non-restorative sleep disturbance and fatigue. The examination revealed a very faint malar flush but no other rashes. The Plaintiff had 18/18 tender fibrositic points. Dr. Ikeman found no evidence of an active cervical or lumber radiculopathyomyelopathy. "She does fulfill criteria for a diagnosis of fibromyalgia." On exam, Dr. Ikeman found no significant neurologic abnormalities. Dr. Ikeman noted that Plaintiff does have an anti-nuclear antibody but that it does not mean she has systemic lupus or other related systemic inflammatory disease. Dr. Ikeman found no evidence of any inflammatory process and noted she was being treated for B12 deficiency. Dr. Ikeman found Plaintiff's complaints consistent with her physical findings and suggested additional serologic testing. (Tr. 243–245).

1/09/01 The Plaintiff was again examined by Dr. Bassetti. Symptoms described by Plaintiff were increased numbness in her left leg down to the toes and on the left ear to the scalp. The Plaintiff had been working part time but stated she did not feel she could do her job as well as it should be done due to limitations with pain and stiffness. Dr. Bassetti's notes reveal: "With her positive ANA I am not convinced at all her symptoms are fibromyalgia symptoms, but we can try to treat this with Pamelor 10mg. # 30, 1 to 2 p.o. q.h.s. for sleep and pain......." "Patient is leaving in a few weeks and really do (sic) not have time to go through appropriate consultations. She will continue with the B12 injections, see a specialist up north if needed. On her return will see a rheumatologist, Dr. Kane, and will probably have a GI evaluation well." (Tr. 209—210).

2/22/01 The Plaintiff was evaluated by Dr. Lynn R. Bernstein a clinical psychologist upon referral by the state agency. (Tr. 257–259). Dr. Bernstein found the Plaintiff to be cooperative with evidence of depressed mood and anxious affect. The Plaintiff advised that she slept poorly and awakened every 1–3 hours. The Plaintiff appeared to have average estimated intelligence and intact long-term memory. The Plaintiff testified she gets up at 7:30 a.m. and spends her days resting, watching TV and doing light housework with breaks. Plaintiff visits friends, goes to the beach, reads and relies on her husband for cooking and cleaning. The Plaintiff also goes out with her husband once a week and usually goes to bed between 8 and 10 p.m. (Tr. 25). The Plaintiff was able to manage her own funds. Dr. Bernstein diagnosed the Plaintiff with: "Pain Disorder associated with both psychological factors and a general medical condition, along with generalized anxiety disorder." Dr. Berstein's Prognosis/Recommendations "Fair prognosis. Recommendations include individual and group rehabilitation psychotherapy, medication evaluations and medical management of symptoms." (Tr. 257–259).

## B. Specific Issues:

1. **The Commissioner erred in failing to credit Plaintiff's fibromyalgia condition and her associated symptoms of fatigue, headaches, widespread constant musculoskeletal pains, and concentration difficulties.**

Plaintiff asserts the Administrative Law Judge erred in finding Plaintiff's impairments were not severe and she was not disabled. The ALJ only credited the

Plaintiff with chronic lumbar, cervical and thoracic sprain. The Administrative Law Judge failed to properly evaluate all Plaintiff's complaints of pain and diagnosis of fibromyalgia at Step Two. The failure of the ALJ to credit the Plaintiff's symptoms [that the state agency's own rheumatologist, Dr. Ikeman, determined would fulfill the criteria for a diagnosis of fibromyalgia] means the ALJ failed to credit the Plaintiff's symptoms of widespread musculoskeletal pains, intermittent numbness, her sleep pattern, difficulty concentrating and fatigue. (Tr. 243).

Several circuits have recognized that fibromyalgia is capable of causing severe, disabling pain. The Sixth Circuit has recognized that fibromyalgia causes severe musculoskeletal pain that is accompanied by stiffness and fatigue due to sleep disturbances. *Lisa v. Secretary of HHS*, 940 F.2d 40 (2nd Cir.1991) (quoting *Preston v. Secretary of HHS*, 854 F.2d 815 (6th Cir. 1988)). The Eighth Circuit has also recognized that fibromyalgia can result in total incapacitation and that an individual's subjective pain and discomfort can limit her work capacity. *Prince v. Bowen*, 894 F.2d 283 (8th Cir.1990); *Cline v. Sullivan*, 939 F.2d 560 (8th Cir.1991). See also *Tsarelka v. Secretary of HHS*, 842 F.2d 529 (1st Cir.1988). See also *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.2005), and the unpublished decision in *Stewart v. Appfel*, 245 F.3d 793 2000 WL 33125958 (11th Cir.2000).

■ According to Social Security Ruling 88–13 and the Eleventh Circuit pain standard, once a [plaintiff] has documented the existence of a medically determinable impairment which is of such a severity to reasonably be expected to produce the alleged pain, the [plaintiff's] complaints of pain must be considered. *Landry v. Heckler*, 782 F.2d 1551 (11th Cir.1986). The Plaintiff's severe pain is documented throughout the record. Therefore, the ALJ improperly articulated reasons for discounting Plaintiff's subjective complaints of pain. 20 C.F.R. § 404.1529(c)(2)-(3).

## II. The Commissioner erred in failing to credit Plaintiff's concentration and attention and mental processing limitations as found by the Commissioner's own examining psychologist.

■ The Plaintiff contends that the ALJ erred by discrediting Dr. Bernstein's diagnoses and failing to explain why he was not crediting Dr. Bernstein's testing results. Further, the ALJ failed to attribute any psychological limitations to the Plaintiff and raised the issue that the Plaintiff never stated she was unable to work because of her depression.

The ALJ's decision shows that the ALJ discounted the findings of Dr. Bernstein because: (1) although the Plaintiff had a remote history of psychological treatment she was not undergoing any current psychological treatment; (2) the Plaintiff continued to work; and (3) the medical record failed to support a disabling mental condition. (Tr. 25).

The ALJ determined that the inconsistencies between Plaintiff's work record, medical record, and demonstrated activities of daily living supported his finding that Plaintiff was not disabled. The ALJ also noted that the record contained no evidence of prescribed psychotropic medication which suggests that the Plaintiff's mental limitations were relatively non-severe.

The record shows that the Plaintiff did allege mental impairments. At the hearing on July 1, 2003, Plaintiff testified that her sleep deprivation caused her to suffer from depression. (Tr. 65). The State Agency in her initial denial admitted that the Plaintiff had stated she was disabled and

unable to work because of depression. (Tr. 103). The Plaintiff admitted to concentration problems on many occasions and in 1997, her treating oral surgeon even stated that her many surgeries had taken a significant psychological toll on her. (Tr. 168, 179). Additionally, it is hard to overlook the fact that the Social Security Administration itself ordered the psychological assessment of the Plaintiff because of her allegations of a mental impairment.

The finding that the Plaintiff has difficulty with attention and concentration and mental processing are characteristic of patients with fibromyalgia. The problems with thinking and memory that characterize the fibromyalgia patient is sometimes called "fibro fog". It appears that the ALJ simply did not understand the nature of fibromyalgia and did not consider it as a separate and distinct condition.

At the hearing, the vocational expert ("VE") testified that there were numerous positions in the national economy that the Plaintiff could perform at the sedentary level such as: teacher's aide, proofoperator, telemarketer and tourist information assistant. However, the Plaintiff's past relevant work such as a data entry clerk, etc., were all at the light activity level. Further, the VE testified that the jobs he identified did not require a: "high degree of concentration, inasmuch as they're not fine, detailed type, precision performance, required jobs but certainly one would have to be alert, and able to communicate, and maintain communication and that type of thing." (Tr. 93). The VE admitted that these were jobs which required bilateral manual dexterity, good concentration as well as continuous exposure to stress and people. The vocational expert was cross examined by Plaintiff's counsel who listed all of Plaintiff's [full range of] impairments. The VE stated that with those particular exertional and non exertional

impairments even the jobs he mentioned would be eliminated..

The ALJ failed to recognize the diagnosis of fibromyalgia or that it could be a basis for the Plaintiff's widespread pain, headaches, concentration difficulties, or her fatigue. During the hearing, based on the ALJ's questions, it appears that the ALJ was not familiar with the diagnosis of fibromyalgia. (Tr. 64–65). The ALJ did not even find that Plaintiff's fibromyalgia was even a medically severe impairment at Step Two of the sequential analysis. At the second step, the ALJ must consider the medical severity of [the claimant's] impairments. *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir.2004), quoting 20 C.F.R. § 404.1520(a)(4)(ii). In doing so, the ALJ must determine whether the impairments, alone or in combination, significantly limit the claimant's physical or mental ability to do basic work skills.

## CONCLUSION

The ALJ failed to discuss his reasons for discrediting Dr. Bernstein's objective findings and diagnostic impressions and Plaintiff's concentration difficulties that characterize her fibromyalgia disorder. When evaluating any medical source opinion-treating or non treating source, the ALJ is required to consider the factors listed in the regulations. Social Security Ruling 96–5p reaffirms the need for adjudicators to apply the applicable factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d). Further, it appears from the record that Plaintiff's fibromyalgia significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(©).

This matter is remanded with instructions to the Administrative Law Judge to evaluate all the effects of Plaintiff's fibromyalgia and its many symptoms. Further, the Administrative Law Judge is directed to analyze the extent of Plaintiff's atten-

tion and concentration difficulties and mental status on her ability to perform other work in the national economy.

Accordingly, and upon consideration, it is **ORDERED** that:

(1) The decision of the Commissioner denying benefits shall be reversed and this case remanded for further administrative proceedings consistent with the foregoing discussion; and

(2) For the foregoing reasons, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Therefore, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.